**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF NEW MEXICO**

| | |
|---|---|
| GUADALUPE CHAVEZ, et al.,<br>Plaintiffs,<br><br>vs.<br><br>THOMAS VILSACK, Secretary of the<br>Department of Agriculture, et al.,<br>Defendants. | **CASE NO: 1:24-CV-00572 JB/KK**<br><br>**JOINT MOTION AND NOTICE OF<br>MOTION FOR CLASS<br>CERTIFICATION FOR SETTLEMENT<br>PURPOSES AND PRELIMINARY<br>APPROVAL OF CLASS SETTLEMENT,<br>MEMORANDUM OF LAW SUPPORT** |

## JOINT MOTION AND NOTICE OF MOTION

**PLEASE TAKE NOTICE** that Plaintiffs Guadalupe Chavez, Lorenza Romero, Alice Sanchez, Suzie Trujillo and Petra Velarde and Defendant Bosley Management, Inc. hereby jointly move the Court for an order:

(a) Finding that the parties' proposed class meets the requirements of Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) and certifying the proposed class for settlement purposes.

(b) Appointing Plaintiffs Guadalupe Chavez, Lorenza Romero, Alice Sanchez, Suzie Trujillo and Petra Velarde as class representatives.

(c) Appointing the National Housing Law Project and the New Mexico Center on Law and Poverty as counsel for the certified settlement class.

(d) Finding that the class action Settlement between the parties is fair, reasonable, and adequate and granting preliminary approval of the Settlement.

(e)  Finding that the proposed class notice generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and file their objection and approving the class notice for distribution to the class.

(f)  Appointing American Legal Claims Services LLC (ALCS) as class administrator.

(g)  Ordering ALCS to provide notice of provisional class certification to all class members within 45 days from the date of the Court's order.

(h)  Setting the class member response deadline for objections as 60 days from the deadline for ALCS to provide class notice.

(i)  Scheduling a hearing on entry of final approval of the Settlement for 90 days from the deadline for ALCS to provide class notice.

This motion is made pursuant to Fed. R. Civ. P. 23, this Motion and Notice of Motion, the attached Memorandum of Law in support, the pleadings, motions, and other documents cited therein, the Settlement attached as Exhibit A, and the declarations of Marcos Segura and Sovereign Hagar.

Dated: April 7, 2025

                                                          Respectfully submitted,

/s/ Richard H. Cravens, IV                                /s/ Marcos Segura
PRIEST & MILLER LLP                                       NATIONAL HOUSING LAW PROJECT
Ada B. Priest                                             Natalie N. Maxwell
Richard H. Cravens, IV                                    Marcos Segura
6100 Uptown Blvd. NE, Suite 620                           90 New Montgomery St,, Suite 1015
Albuquerque, NM 87110                                     San Francisco, CA 94105
PH: (505) 349-2300                                        TEL: (415) 546-7000
Ada@PriestMillerLaw.com                                   nmaxwell@nhlp.org
Rick@PriestMillerLaw.com                                  msegura@nhlp.org

*Attorneys for Bosley Management, Inc*                    NEW MEXICO CENTER ON LAW AND

ii

POVERTY
Sovereign Hager
Maria Griego
301 Edith Blvd., NE
Albuquerque, NM 87102
(505) 255-2840
sovereign@nmpoverylaw.org
maria@nmpovertylaw.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that April 7, 2025, the foregoing was served on all counsel of record via filing with the court's CM/ECF system.

/s/ *Marcos Segura*
Marcos Segura

**TABLE OF CONTENTS**

I. **INTRODUCTION** ............................................................................................................1

II. **FACTUAL AND PROCEDURAL BACKGROUND** ...............................................3

    A. **Section 515 Program Overview And Plaintiff Tenancies** ........................3

    B. **Bosley's Alleged Noncompliance With Section 515 Program Requirements**............4

    C. **Litigation And Negotiations** .........................................................................6

    D. **Summary Of Claims** ......................................................................................8

III. **SUMMARY OF PROPOSED CLASS SETTLEMENT** .........................................9

    A. **The Settlement Class** ...................................................................................10

    B. **Relief Provided By The Settlement** ..........................................................10

    C. **Notice Plan** ...................................................................................................11

IV. **ARGUMENT** ...............................................................................................................12

    A. **The Court Should Conditionally Certify The Proposed Class For Settlement Purposes** ................................................................................................................12

        1. **Rule 23(a)** .................................................................................................13

        (a) **Numerosity** ...........................................................................................13

        (b) **Commonality** ........................................................................................14

        (c) **Typicality** ..............................................................................................16

        (d) **Adequacy** ..............................................................................................16

        2. **Rule 23(b)(3)** ...........................................................................................18

        (a) **Predominance** .......................................................................................18

        (b) **Superiority** ............................................................................................20

        3. **Rule 23(b)(2)** ...........................................................................................21

    B. **The Proposed Class Settlement Is Fair, Reasonable And Adequate**.........................22

        1. **The Proposed Settlement Was Fairly And Honestly Negotiated**.........................23

        2. **Serious Questions Of Fact And Law Exist Placing The Ultimate Outcome Of The Litigation In Doubt** ...............................................................................24

        3. **Value Of An Immediate Recovery Outweighs The Mere Possibility Of Future Recovery**...............................................................................................................25

        4. **Parties Believe The Settlement Is Fair And Reasonable** .......................................26

**C. The Proposed Class Settlement Is Fair, Reasonable And Adequate** .........................27

**V. CONCLUSION** ...............................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of Albuquerque,*

690 F2. 796, 799 (10th Cir. 1982) ................................................................................13

*Anderson Living Trust v. WPX Energy Production*, LLC,

306 F.R.D. 312 (D.N.M. 2015) ...........................................................12,14,15,16,17,20

*CGC Holding Co., LLC v. Broad and Casse,*

773 F.3d 1076, 1096 (10th Cir. 2014) ..........................................................................20

*Colorado Cross-Disability Coal. v. Taco Bell Corp.,*

184 F.R.D. 354, 358 (D. Colo. 1999) ............................................................................14

*DG ex rel. Stricklin v. Devaughn,*

594 F.3d 1188, 1194 (10th Cir. 2010) ...........................................................13,16,18,21

*In re Thornburg Mortg., Inc. Securities Litigation,*

912 F.Supp.2d 1178, 1227 (D.N.M. 2012) .........................................................12,22,23

*Menocal v. GEO Group, Inc.,*

882 F.3d. 905, 915 (10th Cir. 2018) .........................................................................20,21

*Naylor Farms, Inc. v. Chaparral Energy*, LLC,

923 F.3d 779, 789 (10th Cir. 2019) ..........................................................................18,19

*Parkridge Investors Ltd. Partnership by Mortimer v. Farmers Home Admin.,*

13 F.3d 1192, 1195 (8th Cir. 1994) .................................................................................4

*Penn v. San Juan Hospital, Inc.,*

528 F.2d 1181, 1189 (10th Cir. 1975) ........................................................................16

*Pliego v. Los Arcos Mexican Restaurants, Inc.,*

313 F.R.D. 117, 125-26 (D. Colo. 2016).............................................................13,22,23

*Rex v. Owens ex. rel. State of Ok.,*

585 F.2d 432, 436 (10th Cir. 1978) ..........................................................................13

*United Food and Commercial Workers Union v. Chesapeake Energy Corp.,*

281 F.R.D. 641, 653-54 (W.D. Okla. 2012) ................................................................17

*Wallace B. Roderick Revocable Living Trust v. XTO Energy*, Inc.,

725 F.3d 1213, 1220 (10th Cir. 2013) .......................................................................19

*Wal-Mart Stores, Inc. v. Dukes,*

564 U.S. 338, 350 (2011) ........................................................................................16

**Statutes**

42 U.S.C. § 1485 ....................................................................................................4

NMSA § 47-8-1 .......................................................................................................8

NMSA § 47-8-20A ...................................................................................................9

NMSA § 47-8-36A(1) ...............................................................................................9

NMSA § 47-8-36A(7) ...............................................................................................9

**Rules**

Fed. R. Civ. P. 23(a)(1) ..........................................................................................13

Fed. R. Civ. P. 23(a)(2) ..........................................................................................14

Fed. R. Civ. P. 23(a)(3) ..........................................................................................16

Fed. R. Civ. P. 23(a)(4) ..........................................................................................16

Fed. R. Civ. P. 23(b)(2) ..........................................................................................21

Fed. R. Civ. P. 23(b)(3) .................................................................................................18

**Regulations**

7 C.F.R. § 3560.103 .......................................................................................................5

7 C.F.R. § 3560.159(a) ...................................................................................................4

7 C.F.R. § 3560.159(d) ...................................................................................................4

7 C.F.R. § 3560.209(b) ...................................................................................................4

7 C.F.R. § 3560.406(d)(2) ..............................................................................................4

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

### I.    INTRODUCTION

This case involves a 49-unit apartment complex in Espanola that was once federally subsidized and served as one of the few affordable housing options for low-income residents of the city and the economically depressed region overall. Defendant Bosley Management, Inc. (Bosley) is the former owner of the complex. Plaintiffs alleged that Bosley maintained the complex in a chronically uninhabitable condition which led to acceleration of the underlying federally subsidized mortgage. As a result, the complex exited the program well before the mortgage was set to expire, causing tenants to prematurely lose the deep affordability and key tenant protections on which they relied. Plaintiffs further allege that Bosley sought to extrajudicially evict all residents via written notices falsely claiming that he had no choice but to close the complex and force everyone out.

After a thorough and time-consuming investigation and analysis into potential claims - consisting in part of public information requests, document review and interviews with complex residents - Plaintiffs filed a class action lawsuit for monetary and injunctive relief against Bosley and two other defendants.[1] Plaintiffs also filed a petition for class certification. Subsequently, Bosley and Plaintiffs engaged in negotiations off and on for several months. This included a motion to enforce settlement filed by Bosley through which the parties vigorously litigated the material terms of a potential agreement. It also included open court negotiations and further

---

[1] Plaintiffs also filed suit against Defendants U.S. Department of Agriculture (USDA), for various violations of the Administrative Procedures Act, and Villas de Avenida Canada, the subject property's current owner for violations of existing leases and applicable use restrictions. Plaintiffs reached a separate tentative agreement with those defendants and will be seeking Court approval once finalized.

mediation before the Court.

Through these protracted negotiations, Plaintiffs and Bosley have reached an agreement for the entire class defined as "[a]ll current and former residents of La Vista Del Rio Apartments since September 8, 2022, who are or were eligible to receive low-income housing assistance under the United States Department of Agriculture's Sections 515 and 521 Programs." Under the agreement, Bosley will pay class members $140,000 in monetary relief and provide injunctive relief in the form of preferred admission to class members for other subsidized housing developments owned and/or operated by Bosley. In exchange, Plaintiffs will waive all claims Plaintiffs raised or could have raised under the facts alleged in their complaint. **The terms of the settlement are fully set forth in the settlement agreement (Settlement), attached hereto as Exhibit A.** Accordingly, Plaintiffs move the court for conditional class certification for settlement purposes and preliminary approval of the Settlement.

Class certification should be granted because the class meets the requirements of Rule 23(a). With approximately 90 individual class members, it is sufficiently numerous. Commonality, typicality, and adequacy also exist because class member claims are all based on the exact same provisions of New Mexico landlord-tenant law; supported by the same contentions related to Bosley's alleged chronic violations of applicable habitability standards and its alleged attempted extrajudicial evictions; they seek the same relief to remedy the same harm, i.e., having to endure unsafe conditions and housing instability; and proposed class counsel is experienced in class action litigation and the substantive law underlying class claims. Further, common questions predominate, and Bosley's alleged actions affected all class members, eventually causing them all to lose deeply subsidized and stable housing, making the proposed

2

injunctive relief appropriate for the entire class. Thus, Plaintiffs also meet the requirements of Rule 23(b)(3) and 23(b)(2).

Preliminary approval of the Settlement should likewise be granted. The Settlement comes after a thorough pre-filing investigation into potential claims, preparation of substantive motions for preliminary injunctive relief and class certification, and protracted negotiations wherein Plaintiffs and Bosley vigorously litigated the material terms of their agreement with significant Court oversight and involvement. Further, given the factually dependent nature of class member claims, the outcome of litigation is decidedly uncertain. And the monetary relief under the Settlement is close to the upper limit of statutory damages class members stand to win at trial, while the injunctive relief provided offers class members the opportunity to regain the affordable and stable housing they lost because of Bosley's alleged wrongful conduct. In short, it is a great deal for class members, especially when you consider the risk and delay in continuing to litigate the matter. Therefore, the Settlement is fair, reasonable and adequate.

Accordingly, the parties move the Court for an order certifying the proposed class for settlement purposes; appointing the National Housing Law Project and the New Mexico Center on Law and Poverty as class counsel; appointing named Plaintiffs as class representatives; approving American Legal Claims Services LLC as class administrator; granting preliminary approval of the proposed Settlement; approving the proposed class notice and ordering its dissemination in accordance with the timeline in the Settlement; and scheduling a fairness hearing for 90 days after the deadline for issuance of class notice. A more detailed proposed order to this effect has been contemptuously filed with this motion.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

**A.  <u>Section 515 Program Overview And Plaintiff Tenancies</u>**

Pursuant to Section 515 of the Housing Act of 1949, USDA's Rural Development (RD) division is authorized to make loans for the development of affordable housing in underinvested rural areas throughout the United States.[2] The clear objective of the Section 515 program is to expand the stock of safe and sanitary rural rental housing for low-income persons.[3] The proposed putative class are current and former tenants at La Vista del Rio (LVDR), a 49-unit former Section 515 project in Espanola, New Mexico. Compl. Ex. 2. LVDR was developed in 1986 with a 50-year federally subsidized Section 515 mortgage loan. *Id.* Under the Section 515 program, Plaintiffs enjoyed strong tenant protections, including protections from eviction and lease nonrenewal absent good cause, the right to grieve adverse landlord actions (like rent increases and modifications to their lease or occupancy rules), an extended grace period for late rent payments, and limits on late fees.[4]

Under the Section 521 program, that works in conjunction with the Section 515 program, Plaintiffs also received Rental Assistance from RD that limited their total shelter costs (i.e., baseline rent plus utilities) to no more than 30% of their income. Compl. ¶¶ 10-14. Owners also significantly benefit from Section 521 Rental Assistance by allowing them to receive rent up to 150% of the market rate.[5]

**B.  <u>Bosley's Alleged Noncompliance With Section 515 Program Requirements</u>**

---

[2]42 U.S.C. § 1485; *Parkridge Investors Ltd. Partnership by Mortimer v. Farmers Home Admin*, 13 F.3d 1192, 1195 (8th Cir. 1994).

[3] *Parkridge Investments Ltd., supra, at* 1195.

[4] See 7 C.F.R. § 3560.159(a), 7 C.F.R. § 3560.159(d), & 7 C.F.R. § 3560.209(b).

[5] See 7 C.F.R. § 3560.406(d)(2) (allowing for rents up to 150% of market subject to RD approval).

4

In exchange for the benefit of participating in the program, Section 515 owners must maintain their properties in a decent, safe, and sanitary condition.[6] From 1995 through 2023, LVDR was owned and operated by Bosley. Compl. ¶ 83. Plaintiffs alleged that Bosley maintained LVDR in a chronically unsafe and uninhabitable condition since at least September 8, 2022. That is when RD inspected LVDR and found several health and safety violations, including missing fire extinguishers and non-illuminated exit sign; damage to the exterior of the property and rusted, leaking swamp coolers past their useful life, some with exposed wiring; and damaged exterior and interior doors. Compl. Ex. 5. This was all in violation of various subsections of RD's Section 515 health and safety standards in 7 C.F.R. § 3560.103 as well as state habitability standards. *Id.* at 2. Plaintiffs alleged Bosley did not address any of the cited violations.

Several months later, an internal RD assessment found that "[t]he property is needed, but the borrower is unable to make it a safe place to live." Compl. Ex. 4.  As a result, RD recommended that "[t]his property should exit the program. The account should be accelerated." *Id.* at 5. On March 17, 2023, RD provided notice to Bosley of its decision to accelerate LVDR's Section 515 mortgage loan, citing Bosley's ". . . failure to comply with applicable Rural Development regulations and multiple covenants in your loan document . . ." *Id.* ¶ 108.

On March 15, 2023, just before RD initiated formal loan acceleration procedures, Plaintiffs allege that Bosley sent every LVDR household a notice with the subject line "CLOSURE OF COMPLX." Compl. Ex. 13. The notice stated that because "[t]he city of

---

[6] 7 C.F.R. § 3560.103.

Espanola refuses to protect the residents of this complex, [and] the police will not arrest anyone who is conducting illegal activity on-site . . . conditions are unsafe, and are so dire, that the owner has no other choice but to CLOSE this complex." *Id.* (emphasis in original). The notice went on to say that "[t]herefore, for the safety of all involved, this complex will be closed April 1, 2023. All main entry door (*sic*) will be locked April 1, 2023, and all windows will be boarded up." *Id*. Plaintiffs further allege that pursuant to cease and desist letter from RD, Bosley issued a second letter on March 23, 2023 that on the one hand told residents that LVDR would remain open but went on to advise that "[i]f you remain living at this complex, you are living there at your own risk, and you are totally responsible for your safety and you are totally responsible for the safety of all members of your household and your guest." Compl. Ex. 14. Plaintiffs allege that the letter was confusing and did little to quell resident fears of displacement. Indeed, many residents left LVDR because of Bosley's actions.

Pursuant to the loan acceleration, Bosley ultimately sold LVDR to a third party before its original maturity date, causing the LVDR to exit the Section 515 program well before Bosley's commitment was set to expire in 2035. Compl. ¶¶ 133-145.

### C. Litigation And Negotiations

Before filing suit, Plaintiffs conducted an extensive investigation and analysis of potential claims against Bosley and other defendants, preparing two Freedom of Information Act (FOIA) requests to RD; review of the dozens of documents RD submitted in response dealing with RD inspections at LVDR, RD assessments; the LVDR loan acceleration process; and several

interviews with LVDR residents.[7] As a result, Plaintiffs filed a "[c]lass action complaint for declaratory judgment, injunctive relief, and [monetary] damages" against Bosley and two other defendants.[8] The complaint contained class action allegations,[9] and Plaintiffs later filed a motion seeking certification of the proposed class.[10] Bosley opposed Plaintiffs' motion.[11] Plaintiffs also filed a motion for preliminary injunctive relief.[12] All motions were stayed by agreement of the parties to allow for negotiations.[13]

The parties engaged in negotiations off and on for the next several months. This includes a demand letter from Plaintiffs to Bosley containing a demand for $140,000 to settle monetary claims for the entire class.[14] Bosley's counsel accepted via email.[15] In response, Plaintiffs' counsel reiterated that the demand ". . . contemplates agreement on class certification for purposes of settlement, which will require court approval before it can be finalized."[16] Bosley's counsel insisted that an agreement had been formalized and disputed that there had been an agreement on class certification.[17] Bosley then filed a motion to enforce settlement, through which the parties vigorously disputed the terms of any potential agreement.[18]

A hearing on Bosley's motion was held on March 5, 2025, before the Honorable James

---

[7] Decl. of Marcos Segura ¶ 9.

[8] Doc. 1 at 1.

[9] *Id.* ¶¶ 168-73

[10] Doc. 24.

[11] Doc. 33.

[12] Doc. 21.

[13] Doc. 54.

[14] Bosley Motion to Enforce Settlement, Ex. C.

[15] *Id.* Ex. D at 4.

[16] *Id.* at 2.

[17] *Id.* at 1.

[18] Doc. 63.

O. Browning.[19] Bosley's motion was denied.[20] However, before the ruling, Plaintiffs and Bosley engaged settlement negotiations for nearly two hours under the auspices of the Court and on the record.[21] Negotiations resulted in Plaintiffs and Bosley agreeing in principle to several material terms, including an agreement on class certification, with the understanding that the agreement would be detailed and reduced to writing during mediation with Judge Kirtan Khalsa.[22] Immediately after the Court adjourned, Plaintiffs and Bosley met with Judge Khalsa for nearly four more hours further discussing the agreed-upon terms and reducing them to writing.[23] A final written agreement was reached and fully executed on March 24, 2025.[24]

By mutual agreement of the parties, the agreement was amended to change the distribution of monetary relief to account for all class members, which had increased based on more accurate post-settlement information, and to remove cy pres and service award provisions, with remaining settlement funds being equally distributed to class members previously receiving a distribution.[25]

**D.  <u>Summary Of Claims</u>**

Plaintiffs' claims against Bosley are based on various provisions of New Mexico's Uniform Owner-Resident Relations Act (UORRA)[26] for allegedly maintaining LVDR in an

---

[19] Doc. 79.
[20] *Id.*
[21] Doc. 79
[22] *Id.*
[23] Doc. 80.
[24] Ex. A.
[25] Ex. A, Addendum of Settlement Agreement and Release of Claims (Addendum).

[26] NMSA § 47-8-1 et seq.

uninhabitable condition during the relevant period and for his alleged attempt to extrajudicially evict Plaintiffs by serving them with a letter falsely claiming that Bosley had no choice but to close LVDR. Compl. ¶¶ 76-81, 99-107, 126-29, 141, 201-210. Specifically, NMSA § 47-8-36 provides that an ". . . owner or any person acting on behalf of the owner shall not knowingly exclude the resident, remove, **_threaten_** or attempt to remove or dispossess a resident from the dwelling unit without a court order by . . ." means of fraud or through ". . . any willful act rendering a dwelling unit . . . on the premises inaccessible or uninhabitable." NMSA § 47-8-36A (1) & (7) (emphasis added). Bosley's alleged knowing and wanton failure to maintain LVDR in an uninhabitable condition also violated his obligations under NMSA § 47-8-20, including his obligation to comply with " . . . _applicable_ minimum housing codes materially affecting health and safety, make repairs and do whatever is necessary to put and keep the premises in a safe condition as provided by applicable law . . . maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances . . .," among other commitments. NMSA § 47-8-20A. (emphasis added).

Plaintiffs contend that Bosley's own letter shows his attempt to extrajudicially evict members of the proposed putative class by misrepresenting that it was being forced to close down LVDR. Plaintiffs further contend that RD notices to Bosley show the severe habitability issues that plagued LVDR since at least September of 2022 and that Bosley refused to make any fixes, which eventually threatened the displacement of class members, and in some cases did displace LVDR residents, when RD accelerated the underlying mortgage. This constitutes two violations of NMSA § 47-8-36.2A.  Bosley has denied all contentions.

### III.    <u>SUMMARY OF PROPOSED CLASS SETTLEMENT</u>

**A. The Settlement Class**

The settlement calls for certification of a Settlement Class under Rule 23(b)(2) and Rule 23(b)(3), defined as: "All current and former residents of La Vista Del Rio Apartments since September 8, 2022, who are or were eligible to receive low-income housing assistance under the United States Department of Agriculture's Sections 515 and 521 Programs."[27]

**B. Relief Provided By The Settlement**

Under the Settlement, Bosley agrees to pay $150,000 total to settle the claims against him. $140,000 is compensation to the estimated 90 class members, with the remaining $10,000 going to the cost of class administration.[28] The Settlement calls for distributions of $2,500 for each class member household and an additional $1,000 for each household that includes a class member that moved from LVDR prior to January 1, 2024.[29] There will be no reversion of settlement funds to Bosley.[30] Any remaining funds will be redistributed to class members who previously received a portion of settlement funds.[31]

Bosley also agrees to provide documentation to Plaintiffs' counsel that Defendant Villas de Avenida Canada, the entity that now owns LVDR, had notice of the land use restrictions that now apply to the property.[32] Bosley further agreed to provide priority admission to class members at other Section 515 properties owned and/or operated by Bosley for a two-year period

---

[27] Ex. A § I ¶ 15.

[28] *Id.* § II ¶ 1.

[29] Addendum § II ¶ 1.

[30] Addendum § II ¶ 4.

[31] *Id.*

[32] Ex. A § II ¶ 8.

10

from final approval of the Settlement, subject to the class member qualifying for occupancy.[33]

### C.  Notice Plan

Under the Settlement, American Legal Claims Services LLC (ALCS), a third-party class administrator, will administer the Settlement.[34] This includes making all monetary distributions required under the agreement as well as locating and providing notice to class members.[35]

Under the Settlement, the Court's preliminary approval order shall direct the settlement administrator to provide notice of provisional class certification to all class members within 45 days of when the Court issues its order.[36] **Class notice is attached as Exhibit B.** Prior to providing notice, the class administrator will attempt to find class members who moved from LVDR but did not leave a forwarding address.[37] To assist, Bosley will provide to the class administrator certification forms submitted by class members who no longer live at the property.[38] These certification forms contain more detailed information that can be used to conduct a more in-depth search. This disclosure will be made pursuant to the Stipulated Confidentiality/Protective Order entered by Judge Khalsa.[39]

Class members have 60 days from the last day for the class administrator to provide notice to submit exclusion requests or objections.[40] The class administrator will remail any

---

[33] *Id.*  § II ¶ 9.
[34] *Id.*  § II ¶ 4.
[35] *Id.*
[36] *Id.*  § III ¶ 2.
[37] *Id.*  § III ¶ 3.
[38] *Id.*

[39] Doc. 83.
[40] *Id.*  § III ¶ 5.

returned notices, unless the notice is returned more than 30 days after the initial mailing.[41]

## IV.   ARGUMENT

### A.  The Court Should Conditionally Certify The Proposed Class For Settlement Purposes

"The concerns that Rule 23 addresses are present when certifying a case, whether for trial or for settlement." *In re Thornburg Mortg., Inc. Securities Litigation*, 912 F.Supp.2d 1178, 1227 (D.N.M. 2012) (*Thornburg*). Therefore, a class certified for settlement purposes only must nonetheless meet the requirements of Rule 23. *Id.*  However, in certifying a class for settlement purposes, the Court ". . . need not inquire whether the case would, if tried, present intractable management problems, as settlement necessarily means the parties are not proceeding to trial." *Id.*

To gain class certification, the proposed class must meet each element under Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy. *Anderson Living Trust v. WPX Energy Production*, LLC, 306 F.R.D. 312 (D.N.M. 2015) ("*Anderson Living Trust*"). The proposed class action must also match one of three scenarios described in Rule 23(b). Fed. R. Civ. P. 23(b). Because the settlement provides both injunctive and monetary relief, Plaintiffs seek class certification under both Rule 23(b)(2) and Rule 23(b)(3).

"In deciding whether the proposed class meets these requirements, the district court 'must accept the substantive allegations of the complaint as true, though it need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and

---

[41] *Id.*  § III ¶ 4.

factual issues presented by plaintiff's complaints." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d

1188, 1194 (10th Cir. 2010) (internal quotation marks omitted). Still, in applying Rule 23, the

Court's function is not to conduct an inquiry into the merits of the underlying claims but instead

it is only to determine if the requirements of Rule 23 have been met. *Anderson v. City of*

*Albuquerque*, 690 F2. 796, 799 (10th Cir. 1982).

Plaintiffs meet each requirement under Rules 23.

1. **Rule 23(a)**

(a) **Numerosity**

Rule 23(a)(1) requires that the proposed class membership be sufficiently large that

joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Impractical does not mean

impossible and thus impossibility of joinder need not be shown, ". . . only that plaintiff will

suffer a strong litigation hardship or inconvenience if joinder is required." *Id.*; *Pliego v. Los*

*Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125-26 (D. Colo. 2016). Further, there is ". . .

no set formula to determine if the proposed class is so numerous that it should be so certified."

*Rex v. Owens ex. rel. State of Okl.*, 585 F.2d. 432, 436 (10th Cir. 1978). Instead, the

determination is made on the specific facts of each case. *Id.*  (explaining that "[t]he

determination is to be made in the particular circumstances of the case,").

To establish numerosity, the proponent must provide ". . . evidence of established,

ascertainable numbers constituting the class . . ."  *Rex v. Owens ex. rel. State of Okl.*, 585 F.2d.

432, 436 (10th Cir. 1978). However, "[i]n determining whether a proposed class meets

the numerosity requirement, the exact number of potential members need not be shown, and a

court may make common sense assumptions to support a finding that joinder would be

impracticable." *Anderson Living Trust*, 306 F.R.D. at 380 (internal quotation marks omitted).

Pursuant to the Settlement, Bosley has provided rent rolls for the period covered in the proposed class definition.[42] The rent rolls list the head of household for each unit during that time. According to the rolls, 46 different heads of household lived at LVDR during the relevant period. Assuming, at least two individuals lived in each unit, there are approximately 90 individual former and current LVDR residents that fit the proposed class definition.

Additionally, many of these individuals have since moved away. It is hard to ascertain where these former residents have relocated, making it difficult to identify and locate each one. Ex. D Decl. of Sovereign Hagar ¶ 13. This represents a strong litigation hardship, making joinder impractical, if not impossible, thus supporting a finding of numerosity. See *Colorado Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 358 (D. Colo. 1999) (finding that "[t]he fact that a class is dispersed over several counties weighs in favor of a finding of numerosity" as does the difficulty in identifying individual class members). The putative class members are also unlikely to pursue litigation individually, since they all have limited incomes, and therefore limited access to legal counsel to pursue litigation,[43] yet another factor in favor of numerosity. *Id.* (listing the ability of class members to institute individual lawsuits as a relevant factor when assessing numerosity).

**(b) Commonality**

Rule 23(a)(2) requires Plaintiffs to show that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). To meet this requirement, Plaintiffs' individual claims must

---

[42] Ex. C, LVDR Rent Rolls.
[43] Compl. ¶¶ 10-14.

depend upon a common contention and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Each class member's claims against Bosley are based on the exact same provisions of UORRA. Compl. ¶¶ 76-81, 201-210. These claims are based on the same set of contentions: Bosley failure to maintain LVDR in compliance with applicable habitability standards, resulting in Bosley's default of his Section 515 mortgage and exit from the Section 515 program, and Bosley's unlawful eviction notices that falsely claimed that he was being forced to shut down LVDR and remove all residents. *Id.* at ¶¶ 99-107, 126-29, 141, 201-210. Plaintiffs also allege the same injury, i.e., having to endure substandard housing conditions and the threat of an extrajudicial eviction. *Id.* And Plaintiffs seek the same remedy, i.e., monetary relief under UORRA. Compl. § VII ¶¶ C-E. In short, Plaintiffs' contentions involve the same claims, based on the same legal theories, supported by the same operative facts, and they seek redress for the same injuries. Thus, resolution of those contentions will resolve the controversy against Bosley as to each class member, meaning there is commonality amongst the class.

There may be some differences among Plaintiffs related to the exact sum of monetary relief they are entitled depending on the length of time they endured substandard housing conditions and/or the costs incurred by being forced to move by Bosley's unlawful eviction notices. However, those issues are not central to the validity of Plaintiffs' claims, and such factual differences are to be expected in class action litigation and thus they ". . . should not result in a denial of class certification where common questions of law exist." *Anderson Living*

15

*Trust*, 306 F.R.D. at 380 (internal quotation marks omitted).

    **(c)** <u>**Typicality**</u>

        Rule 23(a)(3) requires that the claims of the named representative parties be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198-99.

        The commonality and typicality requirements of Rule 23 tend to merge. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n. 5 (2011).  As discussed above with respect to commonality, Plaintiffs' claims are all based on the same legal theories, supported by the same set of operative facts, and they seek redress of the same injuries. Therefore, the claims of the named Plaintiffs are typical of the class as a whole. As to differences in monetary damages, as is the case with commonality, "[i]t is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hospital, Inc,*. 528 F.2d 1181, 1189 (10th Cir. 1975). This includes varying amounts of monetary damages among the putative class members. *Anderson Living Trust*, 306 F.R.D. at 382.

    **(d)** <u>**Adequacy**</u>

        Rule 23(a)(4) requires a finding that representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to this inquiry: ". . . (i) whether the named plaintiffs and their counsel have

any conflicts with other proposed class members; and (ii) whether the named plaintiffs and their

counsel will vigorously prosecute the action on the class' behalf." *Anderson Living Trust*, 306

F.R.D. at 383.

As to the first question, intra-class conflicts may negate the element of adequacy. *Id.* 383.

However, "only a conflict that goes to the very subject matter of the litigation will defeat a

party's claim of representative status." *Id.* at 384 (internal quotation marks omitted). Here, there

are no conflicts, big or small, between class members and the named Plaintiffs or their attorneys.

Ex. E Decl. of Marcos Segura ¶ 13; Hagar Decl. ¶ 15.

As to the second question, ". . . the experience and competence of the attorney

representing the class may inform the court's analysis." *Id.* at 383; *United Food and Commercial

Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 653-54 (W.D. Okla. 2012). The

National Housing Law Project's (NHLP) mission is to preserve and expand the stock of federally

subsidized affordable housing and to protect the rights of tenants of such housing. Accordingly,

NHLP's attorneys are experts in the laws and regulations related to federally subsidized housing,

including RD Sections 515 and 521 housing, and collectively have decades of experience

litigating preservation cases like the one here, including Section 515 prepayment cases.[44] They

have also previously litigated cases also involving prepaid Section 515 properties. See e.g.,

*Acosta et al. v. Vilsack et al.*, 5:2021cv-04045 (N.D. Iowa October 11, 2021). Further, NHLP

attorneys have experience bringing class action cases seeking to protect and redress violations of

their federal housing rights, civil rights, and lease claims. Segura Decl.¶¶ 4-6.

---

[44] See NHLP mission statement, available at https://www.nhlp.org/about/mission/.

The New Mexico Center on Law and Poverty (NMCLP) is a non-profit organization and law firm dedicated to advancing economic and social justice through education, advocacy, and impact litigation. Hagar Decl. ¶¶ 4-6. One of the core goals of NMCLP is advancing protections for renters through legal reform, impact litigation, and preservation of affordable housing. NMCLP has represented multiple classes in litigation in federal court. *Id*. at ¶ 11.

### 2. <u>Rule 23(b)(3)</u>

In addition to satisfying Rule 23(a), the class must also meet the requirements of Rule 23(b). *DG ex. rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010). As to monetary damages, Plaintiffs seek relief under rule 23(b)(3). Under this rule, the Court must find ". . . that the questions of law or fact common to class members ***predominate*** over any questions affecting only individual members, and that a class action is ***superior*** to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added).

### (a) <u>Predominance</u>

Rule 23(b)(3)'s predominance requirement is like commonality under rule 23(a), but additionally requires the court to find not only that common questions exist among the individual claims of putative class members, but that those common questions predominate over individual questions. *Naylor Farms, Inc. v. Chaparral Energy*, LLC, 923 F.3d 779, 789 (10th Cir. 2019). "Notably, this doesn't mean a plaintiff must show that all of the elements of the claim entail questions of fact and law that are common to the class or that the answers to those common questions [are] dispositive of the claim." *Id.* (internal quotation marks omitted). The predominance inquiry simply ". . . asks whether the common . . . issues in the case are more prevalent or important than the non-common . . . individual issues." *Id.* (internal quotation marks

omitted)[45]. "Thus, to determine whether a plaintiff can satisfy Rule 23(b)(3)'s predominance requirement, a court must first characterize the issues in the case as common or not, and then *weigh* which issues predominate," meaning which are more important. *Id.* An individualized question or issue is one that requires individualized proof that varies from one member to another, while a common question or issue requires the same evidence for each member to make a prima facie showing on their claim or the pertinent issue is susceptible to generalized, class-wide proof. *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Again, each one of the putative class members' claims are premised on the same alleged actions and inactions by Bosley: Bosley's violations of UORRA for his chronic, project-wide violations of applicable habitability standards and unlawful attempt to force class members out of LVDR by serving each resident with a notice falsely claiming that he had no choice but to shut the complex down. These issues are common among the Plaintiffs and putative class members, since evidence of the alleged misconduct will establish a prima facie case on each members' claims, thus making them subject to generalized, class-wide proof. Thus, these common issues predominate over individual issues.

The individual questions presented relate to the exact damages amount for Bosley's alleged violations of applicable state law, but these issues are not central to the validity of Plaintiffs' claims, while the common issues are determinative.

---

[45] Said another way, ". . . predominance may be destroyed if individualized issues will overwhelm those questions common to the class." *Wallace B. Roderick Revocable Living Trust v. XTO Energy*, Inc., 725 F.3d 1213, 1220 (10th Cir. 2013).

**(b) <u>Superiority</u>**

The other requirement under Rule 23(b)(3) is superiority, ". . . which means that a class action would be superior to—not merely just as good as or more convenient than—all other available procedural mechanisms." *Anderson Living Trust*, 306 F.R.D. at 406. To satisfy this requirement, "[i]t is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co., LLC v. Broad and Casse*, 773 F.3d 1076, 1096 (10th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).[46]

That is the case here. Class treatment will avoid the possibility of the Court having to adjudicate at least 90 or so individual lawsuits involving the same Defendant, the same wrongful conduct, and the same legal theories. By adjudicating these virtually identical controversies as a class action, the Court can resolve them all economically and consistently, without any foreseeable adverse consequence.

Superiority also exists where class action status would ". . . allow[] for the vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Menocal v. GEO Group, Inc.*, 882 F.3d. 905, 915 (10th Cir. 2018)

---

[46] Rule 23(b) includes a non-exhaustive list of factors that may be applied that in the aggregate get at the same thing. They are the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

(internal quotations omitted). "For this reason, the class action device is especially pertinent to vulnerable populations." *Id.* (internal quotations omitted). Plaintiffs are low-income individuals with limited access to legal counsel to pursue their claims and cannot pursue their claims themselves, given the complexity of the federal law involved. Compl. ¶¶ 10-14. This further supports a finding of superiority. See *Menocal v. GEO Group, Inc.*, 882 F.3d. 905, 915 (10th Cir. 2018) (explaining that "class members' limited understanding of the law . . . weigh[s] in favor of class certification").

### 3. Rule 23(b)(2)

As to declaratory and injunctive relief, Plaintiffs seek certification under rule 23(b)(2). Rule 23(b)(2) permits certification of an injunctive class "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). By its terms, "[r]ule 23(b)(2) 'imposes two independent but related requirements.'" *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) (*Devaughn*) (quoting *Shook v. Board of County Commissioners of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008)) (*Shook*). First, . . . the "defendants' actions or inactions must be based on grounds generally applicable to all class members." *Devaughn,* 594 F.3d. at 1199. (internal quotation marks omitted). Second, plaintiffs must also establish the injunctive relief they have requested is appropriate for the entire class. *Id.*

On the first prong, the conduct at the heart of class members' claims indeed involves conduct by Bosley generally affecting the entire class. Bosley's alleged violations of applicable habitability standards were not limited to a single unit or subset of units *but affected LVDR in its*

21

*entirety*. Likewise, Bosley's alleged unlawful eviction notices were served on *all* LVDR residents, not just some residents.

On the second prong, Bosley's alleged actions ultimately resulted in LVDR prematurely exiting the Section 515 program, causing class members to lose their deeply subsidized rents and the strong tenant protections guaranteed under the program. The injunctive relief in the Settlement requires Bosley to offer priority admission to all class members at any other Section 515 property owned and/or operated by Bosley. By offering all class members the opportunity to live at habitable, stable, and deeply subsidized Section 515 housing, the settled injunctive relief offers class members the chance to regain what they lost, thus adequately remedying the harm of Bosley's alleged actions without having to differentiate between class members.

### B.  <u>The Proposed Class Action Settlement Is Fair, Reasonable And Adequate</u>

In considering preliminary approval of class action settlement, the Court must also determine whether the proposed settlement is fair, reasonable and adequate. *Thornburg*, *supra*, 912 F.Supp.2d at 1241 (D.N.M. 2012). In making this determination, courts apply a four-factor test that includes (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties' judgment that the settlement is fair and reasonable. *Id.*  "Although the Court will consider these factors in depth at the final approval hearing, they also provide a useful guide at the preliminary approval stage."  *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016) (*Pliego*). At bottom, "[i]f the settlement reflects a reasonable compromise of issues in dispute, the court may approve

the settlement to promote the policy of encouraging settlement of litigation." *Id.*

Additionally, "[t]he object of preliminary approval is for the Court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness." *Pliego*, *supra*, at 128. "Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." *Id.* Therefore, courts ". . . will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litigation*, 258 F.R.D. 671, 675 (D. Kan. 2009).

## 1. <u>The Proposed Settlement Was Fairly And Honestly Negotiated</u>

In determining whether a settlement is the result of fair and honest negotiations, courts examine "whether the parties have vigorously advocated their respective positions throughout the pendency of the case." *Thornburg*, *supra*, 912 F.Supp.2d at 1241.

Before filing the complaint, Plaintiffs' counsel conducted a thorough investigation of their claims which included preparing two Freedom of Information Act (FOIA) requests to RD; review of the dozens of documents RD submitted in response dealing RD inspection at LVDR, RD assessments, and the LVDR loan acceleration process; and several interviews with LVDR residents.[47] The complaint was followed by extensive motions seeking preliminary injunctive

---

[47] Segura Decl. ¶ 9.

relief and class certification.[48]

      The parties then engaged in negotiations off and on from August 2024 to March 2025.[49] This included a motion to enforce settlement filed by Bosley through which the parties vigorously litigated the terms of their agreement, particularly the inclusion of class certification for settlement purposes.[50] Negotiations continued into the hearing on Bosley's motion, at which point the parties engaged in nearly two hours of contentious on-the-record negotiations before Judge James O. Browning, resulting in the general terms of the settlement agreement now before the Court.[51] This was immediately followed by nearly four more hours of mediation conducted by Judge Kirtan Khalsa wherein Bosley and Plaintiffs reduced their agreement to writing.[52]

      Plaintiffs' careful pre-filing investigation, subsequent motions work, and protracted and contentious negotiations, the final stages of which were conducted before the Court, all show that the parties' proposed settlement is the result of transparent, fair and honest negotiations conducted at arm's length.

**2.**    <u>Serious Questions Of Law And Fact Exist Placing The Ultimate Outcome Of The Litigation In Doubt</u>

      The foundation of Plaintiffs' claims against Bosley are the uninhabitable conditions they endured at LVDR while it was owned by Bosley. In response to the allegations, Bosley raised several affirmative defenses including that ". . . any injury or damage allegedly suffered by

---

[48] Doc. 21 (Motion for Preliminary Injunctive Relief) & Doc. 24 (Motion for Class Certification).
[49] Doc. 63, Bosley Motion to Enforce Settlement, Ex. A.
[50] *Id.*
[51] Doc. 79, 03/05/2025 Court Minute Order.
[52] Doc. 80.

Plaintiffs was caused or contributed to by the negligence, fault, bad faith, breach of contract, or other wrongful or torturous conduct of Plaintiffs . . ."[53] So, liability in this case was lining up to be a factually dependent inquiry centering on whether Plaintiffs contributed to the poor conditions at LVDR and to what extent. Such factual inquiries depend largely on the jury's unpredictable credibility assessment of witnesses, which makes for an uncertain outcome at trial.[54] Considering this, the outcome at trial was far from certain, even on Plaintiffs' well-documented claims.

### 3.  Value Of an Immediate Recovery Outweighs The Mere Possibility Of Future Relief

The value of the immediate recovery simply means the monetary worth of the settlement. *Gottleib v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993) (abrogated on other grounds by *Devlin v. Scardellitti*, 536 U.S. 1 (2002).  "That value is to be weighed . . . against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.*

Plaintiffs' claims under UORRA provide for statutory damages. Specifically, where an owner violates NMSA § 47-8-36A, tenants are entitled to civil penalties equal to two times the amount of the monthly rent.  NMSA § 47-8-36C (2) (cross-referencing NMSA § 47-8-48B). UORRA also allows for actual damages, like the cost of having to relocate because of violative conduct. Based on full occupancy of 48 units at LVDR and assuming two violations (one for uninhabitable conditions and one for unlawful threats of displacement), Bosley's potential liability for the alleged violations is $154,220 total, or $3,212 per household. Meanwhile, the

---

[53] Bosley Answer, Affirmative Defenses ¶ 10 at 67-68.
[54]  Segura Decl. ¶ 8.

settlement provides for $140,000 in total monetary relief to the approximately 46 class member households, which comes out to approximately $2,500 per household. Class member households that were forced to leave LVDR will receive an additional $1000 per household.

Simply put, the settlement provides class member households with the upper limit of monetary statutory relief and additional relief that accounts to some degree for the actual damages they suffered, namely the cost of relocating on account of Bosley's alleged violative conduct. Actual damages do include compensation for pain and suffering, which can be significant but are unlikely to be awarded given the heightened standard that Plaintiffs must meet. *Bhasker v. Kemper Casualty Insurance Company*, 361 F.Supp.3d 1045, 1134 (D.N.M. 2019) (explaining that "[t]he award of punitive damages requires a culpable mental state because such damages aim to punish and deter culpable conduct beyond that necessary to establish the underlying cause of action) (internal quotation marks omitted).

This settlement provides class members with substantial relief. Indeed, it is not far off from what Plaintiffs stand to win if the case were to be tried to verdict. And the value of that future relief is further diluted by the fact that the case would not be resolved for another year or more, at great expense to each party, and because the outcome is far from certain.

### 4. Parties' Believe The Settlement Is Fair And Reasonable

"When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. State of Kansas, Dept. of Revenue*, 209 F.Supp.2d 1179, 1182 (D. Kan. 2002). Therefore, "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Id.*

Counsel for the class has significant experience litigating class action lawsuits and

housing cases. Based on their experience with similar cases, the strength of Plaintiffs' claims and considering the risks of litigation and the likely lengthy fight ahead, Counsel believe that the settlement represents an excellent result for the class.[55]

### C.  Class Notice Is Adequate

For class certification for monetary relief under Rule 23(b)(3), "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The rule also requires that the notice ". . . clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (v) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

By requiring detailed applicant certification forms from Bosley, remailing of returned class notices and services from a third-party class administrator, the proposed notice plan is reasonably designed to ensure that class members no longer living at LVDR receive notice. And the notice itself, attached hereto as Exhibit B, generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard, thus meeting the requirements of Rule 23. *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1352, 1388 (9th Cir. 1980).

---

[55] Segura Decl. ¶¶ 11-12; Hagar Decl. ¶ 16.

## V.     <u>CONCLUSION</u>

For the forgoing reasons, Plaintiffs and Bosley respectfully request that the Court grant this motion for certification of the proposed class for settlement purposes and preliminary approval of the Settlement, including class notice, and enter the proposed order concurrently submitted herewith.

Dated: April 7, 2025

Respectfully submitted,

/s/ Marcos Segura
NATIONAL HOUSING LAW PROJECT
Natalie N. Maxwell
Marcos Segura
90 New Montgomery St,, Suite 1015
San Francisco, CA 94105
TEL: (415) 546-7000
nmaxwell@nhlp.org
msegura@nhlp.org

NEW MEXICO CENTER ON LAW AND
POVERTY
Sovereign Hager
Maria Griego
301 Edith Blvd., NE
Albuquerque, NM 87102
(505) 255-2840
sovereign@nmpoverylaw.org
maria@nmpovertylaw.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

28

I certify that on April 7, 2025, the foregoing was served on all counsel of record via filing with the court's CM/ECF system.

/s/ *Marcos Segura*
Marcos Segura