**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF NEW MEXICO**

| | |
|---|---|
| GUADALUPE CHAVEZ, et al.,<br>Plaintiffs,<br><br>vs.<br><br>BROKKE ROLLINS, Secretary of the<br>Department of Agriculture, et al.,<br>Defendants. | **CASE NO: 1:24-CV-00572 JB/KK**<br><br>**UNOPPOSED MOTION AND NOTICE<br>OF MOTION FOR CLASS<br>CERTIFICATION FOR SETTLEMENT<br>PURPOSES AND PRELIMINARY<br>APPROVAL OF CLASS SETTLEMENT,<br>MEMORANDUM OF LAW SUPPORT** |

## UNOPPOSED MOTION AND NOTICE OF MOTION

**PLEASE TAKE NOTICE** that Plaintiffs Guadalupe Chavez, Lorenza Romero, Alice Sanchez, Suzie Trujillo and Petra Velarde hereby move the Court for an order:

(a) Finding that the parties' proposed class meets the requirements of Fed. R. Civ. P. 23(a) and 23(b)(2) and certifying the proposed class for settlement purposes.

(b) Appointing Plaintiffs Guadalupe Chavez, Lorenza Romero, Alice Sanchez, Suzie Trujillo and Petra Velarde as class representatives.

(c) Appointing the National Housing Law Project and the New Mexico Center on Law and Poverty as counsel for the certified settlement class.

(d) Finding that the class action Settlement between the parties is fair, reasonable, and adequate and granting preliminary approval of the Settlement.

i

(e) Finding that the proposed class notice generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and file their objection and approving the class notice for distribution to the class.

(f) Ordering that class members present objections by notifying Class Counsel in writing no later than three days prior to the final approval hearing, including providing their full name, address, telephone number, intention to appear, and a brief explanation of the basis for the class member's objection.

(g) Ordering Defendant Villas to reimburse Class Counsel for the cost of mailing class notice in an amount not to exceed $2,000, within 30 days of Class Counsel providing receipts.

(h) Scheduling a hearing on entry of final approval of the Settlement at least 60 days from the deadline for Class Counsel to provide class notice.

This motion is made pursuant to Fed. R. Civ. P. 23, this Motion and Notice of Motion, the attached Memorandum of Law in support, the pleadings, motions, and other documents cited therein, the Settlement attached as Exhibit A, and the declarations of Marcos Segura and Sovereign Hagar.

Dated: September 19, 2025

Respectfully submitted,

/s/ Marcos Segura
NATIONAL HOUSING LAW PROJECT
Natalie N. Maxwell
Marcos Segura
90 New Montgomery St,, Suite 1015
San Francisco, CA 94105
TEL: (415) 546-7000
nmaxwell@nhlp.org
msegura@nhlp.org

NEW MEXICO CENTER ON LAW AND
POVERTY
Sovereign Hager
Maria Griego
301 Edith Blvd., NE
Albuquerque, NM 87102
(505) 255-2840
sovereign@nmpoverylaw.org
maria@nmpovertylaw.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that September 19, 2025, the foregoing was served on all counsel of record via filing with the court's CM/ECF system.

/s/ *Marcos Segura*
Marcos Segura

**TABLE OF CONTENTS**

I. <u>INTRODUCTION</u> ...............................................................................................................1

II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u> ..................................................4

   A. <u>Section 515 Program Overview And Tenant Benefits</u> ...............................5

   B. <u>RD Loan Acceleration</u> ...............................................................................6

   C. <u>Restrictive Use Covenant and Issuance of RD Vouchers</u> .......................7

   D. <u>Litigation and Negotiations</u> .......................................................................9

   E. <u>Summary of Claims</u> ..................................................................................10

     1. <u>RD's Alleged Constitutional Violations and Violations of the Administrative Procedures Act</u> ....................................................................10

     2. <u>Villas 'Alleged Violations of the 2023 Use Restrictions and Existing Lease Agreements</u> ........................................................................................12

III. <u>SUMMARY OF PROPOSED CLASS SETTLEMENT</u> ........................................13

   A. <u>The Settlement Class</u> ...............................................................................13

   B. <u>Relief Provided By The Settlement</u> .........................................................13

   C. <u>Notice Plan</u> ...............................................................................................16

IV. <u>ARGUMENT</u> .............................................................................................................16

   A. <u>The Court Should Conditionally Certify The Proposed Class For Settlement Purposes</u> .................................................................................17

     1. <u>Rule 23(a)</u> ......................................................................................18

     (a) <u>Numerosity</u> ...............................................................................18

     (b) <u>Commonality</u> ............................................................................20

     (c) <u>Typicality</u> ..................................................................................21

     (d) <u>Adequacy</u> ..................................................................................22

     2. <u>Rule 23(b)(2)</u> ..................................................................................24

     3. <u>Incidental Waiver of Debts</u> ...........................................................26

   B. <u>The Proposed Class Settlement Is Fair, Reasonable And Adequate</u> .......27

     1. <u>The Proposed Settlement Was Fairly And Honestly Negotiated</u> ..........28

     2. <u>Serious Questions Of Fact And Law Exist Placing The Ultimate Outcome Of The Litigation In Doubt</u> .................................................29

iv

**3.** **Value Of An Immediate Recovery Outweighs The Mere Possibility Of Future Recovery**................................................................................................30

**4.** **Parties Believe The Settlement Is Fair And Reasonable**........................................31

**C.** **Class Notice Is Adequate**........................................................................................32

**V.** **CONCLUSION**................................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta et al. v. Vilsack et al.,*

5:2021 cv-04045 (N.D. Iowa Oct. 11, 2021)................................................................23

*Allison v. Citgo Petroleum Corp.,*

151 F.3d 402 (5th Cir. 1998).............................................................................26

*American Wild Horse Campaign v. Burgum,*

768 F.Supp.3d 1291 (D. Col. 2021) ......................................................................30

*Anderson v. City of Albuquerque,*

690 F2. 796 (10th Cir. 1982)..............................................................................17

*Anderson Living Trust v. WPX Energy Production*, LLC,

306 F.R.D. 312 (D.N.M. 2015) ...........................................................17, 18, 21, 22

*Colorado Cross-Disability Coal. v. Taco Bell Corp.,*

184 F.R.D. 354 (D. Colo. 1999)..........................................................................19

*DG ex rel. Stricklin v. Devaughn,*

594 F.3d 1188 (10th Cir. 2010)......................................................17, 22, 24

*Gottleib v. Wiles,*

11 F.3d 1004 (10th Cir. 1993).............................................................................30

*In re Motor Fuel Temperature Sales Practices Litigation,*

258 F.R.D.671 (D. Kan. 2009) ............................................................................27

*In re Thornburg Mortg., Inc. Securities Litigation,*

912 F.Supp.2d 1178 (D.N.M. 2012)......................................................17, 27, 28

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Services,*

58 F.Supp.3d 1191 (D.N.M. 2014) ............................................................28

*Maher v. Solomon,*

Civ. No. 06-714 JAP/LFG, 2008 WL 11413512 (D.N.M. Feb 1, 2008) ........................................26

*Marcus v. State of Kansas Dept. of Revenue,*

209 F.Supp.2d 1179 (D. Kan. 2002) ............................................................32

*Mendoza v. Tucson Sch. Dist. No. 1,*

623 F.2d 1352 (9th Cir. 1980) ............................................................33

*Murry v. Auslander,*

244 F.3d. 807 (11 Cir. 2001) ............................................................26

*Northern New Mexico Stockmans' Ass'n v. U.S. Fish and Wild Life Service,*

494 F.Supp.3d 850 (D.N.M. 2020) ............................................................30

*Parkridge Investors Ltd. Partnership by Mortimer v. Farmers Home Admin.,*

13 F.3d 1192, 1195 (8th Cir. 1994) ............................................................5

*Penn v. San Juan Hospital, Inc.,*

528 F.2d 1181, 1189 (10th Cir. 1975) ............................................................22

*Pliego v. Los Arcos Mexican Restaurants, Inc.,*

313 F.R.D. 117, 125-26 (D. Colo. 2016) ............................................................18, 27

*Rex v. Owens ex. rel. State of Ok.,*

585 F.2d. 432, 436 (10th Cir. 1978) ............................................................18

*Shook v. Board of County Commissioners of County of El Paso,*

543 F.3d 597, 604 (10th Cir. 2008) ............................................................24

*United Food and Commercial Workers Union v. Chesapeake Energy Corp.,*

281 F.R.D. 641, 653-54 (W.D. Okla. 2012) ..................................................................23

*Wal-Mart Stores, Inc. v. Dukes,*

564 U.S. 338, 350 (2011) ..............................................................................20, 22

**Constitutional**

U.S. Const. amend. V ..............................................................................................7

**Statutes**

**Federal**

42 U.S.C. § 1480(g) .............................................................................................7, 11

42 U.S.C. § 1485 .................................................................................................5, 7

42 U.S.C. § 1490a(a)(2)(A) ...................................................................................6, 12

5 U.S.C. § 706(1) ...................................................................................................10

5 U.S.C. § 706(2)(A) ...................................................................................11, 12, 29

**State**

NMSA 1978, § 57-12-3(D) ....................................................................................13

**Rules**

Fed. R. Civ. P. 23(a) ..............................................................................................17

Fed. R. Civ. P. 23(a)(1) ..........................................................................................18

Fed. R. Civ. P. 23(a)(2) ..........................................................................................20

Fed. R. Civ. P. 23(a)(3) .....................................................................................21, 22

Fed. R. Civ. P. 23(a)(4) ..........................................................................................22

Fed. R. Civ. P. 23(b) ..............................................................................................17

Fed. R. Civ. P. 23(b)(2) ...................................................................................24, 26, 27

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................32

**Regulations**

7 C.F.R. § 11.3 ..................................................................................................................11

7 C.F.R. § 3560.11 ............................................................................................................29

7 C.F.R. § 3560.103 ............................................................................................................6

7 C.F.R. § 3560.156(c)(3) ..............................................................................................8, 12

7 C.F.R. § 3560.156(c)(17) ................................................................................................8

7 C.F.R. § 3560.159(a) ........................................................................................................5

7 C.F.R. § 3560.159(d) ........................................................................................................5

7 C.F.R. § 3560.209(b) ........................................................................................................5

7 C.F.R. § 3560.256(b) ...................................................................................................6, 12

7 C.F.R. § 3560.456(a) ......................................................................................................10

7 C.F.R. § 3560.663(b) ......................................................................................................12

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

### I.    INTRODUCTION

Plaintiffs are former and current residents of a 49-unit apartment complex in Española, New Mexico that was once federally subsidized and served as one of the few affordable housing options for low-income residents of the city and the economically depressed region overall. Due to property-wide habitability issues in violation of the underlying federally subsidized mortgage, the USDA's Rural Development (RD) division, the federal agency in charge of the housing program, accelerated the loan. Plaintiffs allege that this resulted in the original owner paying off the mortgage before its original maturity date, otherwise known as a prepayment, by selling it to Villas de Avenida Canada LLC (Villas). Plaintiffs also allege that this removed the property from the federal housing program and caused tenants to prematurely lose their deeply affordable rents and key tenant protections on which they relied.

Plaintiffs Complaint further alleges that there are key constitutional, statutory and regulatory protections designed to prevent this result, but the federal agency ignored them, including failing to conduct a mandated assessment of the impact of mortgage prepayment on minority housing opportunities and failing to give Plaintiffs notice and an opportunity to appeal the agency's loan acceleration and prepayment decisions.

Plaintiffs allege that despite the existence of use restrictions recorded against the property as a condition of the original owner's sale to Villas (and similar provisions in Plaintiffs' leases) that require rents to remain subsidized and preserve key tenant protections, Villas threatened to increase rents unless tenants obtained RD rental assistance vouchers, and that Plaintiffs would be financially and substantively worse off than under the use restrictions.

1

Plaintiffs also allege that Villas also failed to fix some of the same habitability issues that led to RD's loan acceleration in the first place.  Villas denies that these restrictions applied to the property.  Villas also denies that it failed to address any habitability issues which existed when it purchased the property.

After an extensive and thorough investigation and analysis into potential claims - consisting in part of public information requests, document review and interviews with property residents - Plaintiffs filed a class action lawsuit for monetary and injunctive relief against RD, Villas, and the property's original owner Bosley Management Inc. (Bosley).[1] Plaintiffs also filed a petition for class certification. Subsequently, Plaintiffs engaged in negotiations with RD and Villas off and on for several months. This included a nearly nine-hour settlement conference with the Court.

Through these months-long negotiations, Plaintiffs, RD, and Villas have reached an agreement for a proposed putative class defined as "all tenants who resided at La Vista Del Rio Apartments in Espanola, NM between March 1, 2023, and October 3, 2023, who met the eligibility requirements under the United States Department of Agriculture-Rural Development's Sections 515 housing." The proposed settlement requires Villas to honor the purported property use restrictions as to all class members, which limit class member shelter costs to 30% of household income and extend the slate of tenant protections class members once enjoyed.[2] Plaintiffs allege that the demand for rent in excess of applicable limitations resulted in arrearages

---

[1] Plaintiffs reached a separate class settlement agreement with Bosley that was preliminarily approved by the Court. Doc. 88.

[2] This includes bringing class member units into compliance with RD conditions standards.

for some class members. Accordingly, in settlement of these claims, Villas also agreed to waive rent arrearages allegedly owed by class members.

To support the affordable rents Villas has agreed to charge without risking the long-term viability of the subject property, RD will allow class members to apply for RD rental subsidy vouchers that Plaintiffs contend will effectively replace the rental assistance that Plaintiffs and that putative class members lost. And, to ensure that voucher requirements do not undercut stronger protections in the property use agreement, the settlement provides that the use restrictions govern in case of a conflict. **The terms of the settlement are fully set forth in the settlement agreement (Settlement), attached hereto as Exhibit A.** Accordingly, Plaintiffs now move the Court for conditional class certification for settlement purposes and preliminary approval of the Settlement.

Class certification should be granted because the class meets the requirements of Rule 23(a). With approximately 74 individual class members, it is sufficiently numerous. Commonality, typicality, and adequacy also exist because (1) class member claims are all based on the exact same substantive federal laws and regulations, identical provisions in their respective lease agreements, and property-wide use restrictions; (2) the claims are supported by the same contentions related to RD's alleged failure to follow constitutional, statutory and regulatory requirements and Villas' alleged failure to honor applicable property use restrictions and similar lease provisions; and (3) class members seek relief for the same alleged injury: the loss of tenant protections and deeply subsidized rents, abrogation of their federal statutory and due process rights to notice and an opportunity to be heard, and having to endure threatened unlawful rent increases and substandard housing conditions. Further, the injunctive relief

provided for in the settlement is intended to reverse the consequences of Defendants alleged wrongful conduct without having to tailor relief for each class member, making the proposed injunctive relief appropriate for the entire class. Thus, Plaintiffs also meet the requirements of Rule23(b)(2).

Preliminary approval of the Settlement should likewise be granted. The Settlement comes after a thorough pre-filing investigation into potential claims, preparation of substantive motions for preliminary injunctive relief and class certification, and lengthy negotiations wherein the parties vigorously litigated their positions. There were also serious questions about the remedy the Court would ultimately require, making for an uncertain outcome, even if Plaintiffs prevailed. Meanwhile, the Settlement is intended to largely accomplish Plaintiffs' litigation goal of remaining at the former subsidized property, or having the opportunity to move back, while maintaining subsidized rents and strong tenant protections. This is a solid deal for class members, especially in light of the risk and delay in continuing to litigate the matter. Therefore, the Settlement is fair, reasonable and adequate.

Accordingly, the parties move the Court for an order certifying the proposed class for settlement purposes; appointing the National Housing Law Project and the New Mexico Center on Law and Poverty as class counsel; appointing named Plaintiffs as class representatives; granting preliminary approval of the proposed Settlement; approving the proposed class notice and ordering its distribution in accordance with the timeline in the Settlement; and scheduling a fairness hearing. A more detailed proposed order to this effect has been contemptuously filed with this motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

A. **Section 515 Program Overview And Tenant Benefits**

Pursuant to Section 515 of the Housing Act of 1949, RD is authorized to make loans for the development of affordable housing in underinvested rural areas throughout the United States.[3] The objective of the Section 515 program is to expand the stock of safe and sanitary rural rental housing for low-income persons.[4] However, construction of new Section 515 properties has effectively stopped,[5] making preservation of Section 515 housing paramount to the program's long-term viability and success.

The proposed putative class is comprised of current and former tenants at La Vista del Rio (LVDR), a 49-unit former Section 515 project in Espanola, New Mexico. Compl. Ex. 2. LVDR was developed in 1986 with a 50-year federally subsidized Section 515 mortgage loan. *Id.* Under the Section 515 program, Plaintiffs enjoyed strong tenant protections, including protections from eviction and lease nonrenewal absent good cause, the right to grieve adverse landlord actions (like rent increases and modifications to their lease or occupancy rules), an extended grace period for late rent payments, and limits on late fees.[6]

Under the Section 521 program, that works in conjunction with the Section 515 program, Plaintiffs also received Rental Assistance from RD that limited their total shelter costs (i.e., baseline rent plus utilities) to no more than 30% of their income. Compl. ¶¶ 10-14. To ensure

---

[3]42 U.S.C. § 1485; *Parkridge Investors Ltd. Partnership by Mortimer v. Farmers Home Admin*, 13 F.3d 1192, 1195 (8th Cir. 1994).

[4] *Parkridge Investments Ltd., supra, at* 1195.

[5] Katie Jones & Maggie McCarty, CONG. RSCH. SERV., R47044, USDA RURAL HOUSING PROGRAMS: AN OVERVIEW 14 (2022), available at https://crsreports.congress.gov/product/pdf/R/R47044.

[6] See 7 C.F.R. § 3560.159(a), 7 C.F.R. § 3560.159(d), & 7 C.F.R. § 3560.209(b).

that tenant shelter costs remain at or below 30% of household income, RD's subsidy contribution is adjusted where tenant income changes or where rent or tenant paid utilities increase.[7]

**B. RD Loan Acceleration**

As a condition of participating in the program, Section 515 owners must maintain their properties in a decent, safe, and sanitary condition.[8] From 1995 through 2023, LVDR was owned and operated by Defendant Bosley. Compl. ¶ 83.[9] Plaintiffs alleged that Bosley maintained LVDR in a chronically unsafe and uninhabitable condition since at least September 8, 2022. That is when RD inspected LVDR and found several violations of Section 515 health and safety standards imposed by 7 C.F.R. § 3560.103. Compl. Ex. 5. Plaintiffs alleged Bosley did not address any of the cited violations.

Several months later, an internal RD assessment found that "[t]he property is needed, but the borrower is unable to make it a safe place to live." Compl. Ex. 4. As a result, RD recommended that "[t]his property should exit the program. The account should be accelerated." *Id.* at 5. On March 17, 2023, RD provided notice to Bosley of its decision to accelerate LVDR's Section 515 mortgage loan, citing Bosley's ". . . failure to comply with applicable Rural Development regulations and multiple covenants in your loan document . . ." *Id.* ¶ 108.

Pursuant to RD's loan acceleration, Bosley ultimately sold LVDR to Defendant Villas. Compl. ¶¶ 133-144, 151. This resulted in Bosley paying LVDR's Section 515 loan in full before

---

[7] 42 U.S.C. § 1490a(a)(2)(A); 7 C.F.R. § 3560.256(b).

[8] 7 C.F.R. § 3560.103.

[9] Plaintiffs have reached a separate agreement with Defendant Bosley that was submitted and granted final approval by the Court on September 15, 2025. Doc. 101.

its April 2035 maturity date. Plaintiffs allege that this constituted a prepayment subject to the

Emergency Low-Income Housing Preservation Act (ELIHPA). *Id.* at ¶ 2. ELIHPA aims to

protect tenants of federally subsidized housing, including Section 515 housing, from the adverse

consequences of mortgage prepayment. Compl. ¶¶ 30-45. Plaintiffs contend that ELIHPA

required RD to assess the impact on minority housing opportunities living at LVDR and in the

area. Compl. ¶ 39. Plaintiffs also contend that they had a statutory and a constitutional right to

notice and an opportunity to appeal RD's loan acceleration and prepayment decisions. 42 U.S.C.

§ 1480(g); U.S. Const. amend. V. Plaintiffs allege that RD denied these rights to Plaintiffs.

Compl. ¶¶ 190-192. Plaintiffs also allege that RD failed to determine whether Private Defendants

intentionally caused loan acceleration to circumvent ELIHPA's prepayment requirements, as it

was required to do by federal regulations setting out the loan acceleration process.  Compl. ¶¶

175-177.  RD denies Plaintiffs' allegations that its actions were wrongful or in violation of the

law in any way.

### C.  Restrictive Use Covenant and Issuance of RD Vouchers

As a condition of approving the sale of LVDR, Plaintiffs allege that RD required Bosley

to sign a restrictive land use covenant (2023 Use Restriction) that requires Bosley and any

successors in interest, including Villas, "to use the Property in compliance with 42 U.S.C. § 1484

or § 1485, whichever is applicable, and implementing regulations under 7 CFR part 3560, and

any other applicable regulations and amendments, for the purpose of housing program eligible

very low-, low-, or moderate-income tenants." Compl. Ex. 16. In short, Plaintiffs allege the 2023

Use Restriction effectively requires Villas to operate LVDR as if it is still in the Section 515

program, including keeping tenant rents at the previous subsidized levels and honoring the slate of tenant protections Plaintiffs enjoyed.

Plaintiffs allege their leases include similar post-prepayment protections in accordance with and as required by law.[10] Specifically, they contend tenant leases provide that if LVDR is prepaid subject to use restrictions, leases and renewals must be amended so as to maintain Section 515 and 521 programs protections,[11] while another provision requires that no tenant contribution towards rent may be increased by reason of prepayment or other actions caused by the borrower.[12] Plaintiffs further allege these leases remain in effect post-prepayment.[13]

RD also approved the use of Rural Development housing vouchers (RD Vouchers) at LVDR. However, the subsidy amount paid under these RD Vouchers is permanently set and is thus not adjusted when tenant rent or utility costs increase nor when household income decreases. *Id.* ¶ 61. The required contract under which RD Voucher payments are disbursed also ends good cause eviction protections after only one year. *Id.* ¶ 75. Therefore, though intended to help tenants deal with the financial hardship of prepayment, Plaintiffs allege that RD's program-wide administration of its RD Voucher Program increases tenant shelter costs beyond 30% of income and erodes key tenant protections, in contradiction of the 2023 Use Restriction and Plaintiffs' leases. Compl. ¶¶ 60-75.

---

[10] With minor, nonmaterial differences, all leases are substantially the same.

[11] 7 C.F.R. § 3560.156(c)(17) (listing required provisions in all Section 515 leases).

[12] *Id.* § 3560.156(c)(3).

[13] RD Handbook-3-3560, Attachment 15-E-2, p.1 ¶ (1).

Plaintiffs allege that in violation of the 2023 Use Restriction, and Plaintiffs' leases containing the same material restrictions, Villas threatened to increase Plaintiffs' rent beyond 30% of income and pressured Plaintiffs to obtain RD Vouchers to pay for the threatened rent increases, even though Plaintiffs would be financially and substantively worse off. Compl. ¶¶ 122-123. Plaintiffs also alleged that largely the same habitability issues that led to the Section 515 loan acceleration remained at LVDR. Compl. ¶¶ 150-164. Villas also admitted market rate tenants into LVDR units that are not low or very low-income, which Plaintiffs allege is yet another violation of the 2023 Use Restriction. *Id.* ¶ 150.

### D.  Litigation And Negotiations

Before filing suit, Plaintiffs conducted an extensive investigation and analysis of potential claims against Defendants RD and Villas including preparing two Freedom of Information Act (FOIA) requests to RD; review of the dozens of documents that RD submitted in response dealing with RD inspections at LVDR, RD assessments, and the LVDR loan acceleration process; and several interviews with LVDR residents.[14] As a result, Plaintiffs filed a "[c]lass action complaint for declaratory judgment, injunctive relief, and [monetary] damages" against Defendants.[15] The complaint contained class action allegations,[16] and Plaintiffs later filed a motion seeking certification of the proposed class.[17] Villas opposed Plaintiffs' motion[18] and

---

[14] Decl. of Marcos Segura ¶ 7.
[15] Doc. 1 at 1.
[16] *Id.* ¶¶ 168-73
[17] Doc. 24.
[18] Doc. 39.

Plaintiffs replied.[19] Plaintiffs also filed a motion for preliminary injunctive relief.[20] All motions were stayed by agreement of the parties to allow for negotiations.[21]

The parties engaged in negotiations off and on for the next several months. This includes a demand letter from Plaintiffs to RD and Villas per the Court's mediation rules. This was followed by a Rule 16 settlement conference before Magistrate Judge Kirtan Khalsa on Thursday, March 6, 2025.[22] Mediation lasted nearly nine hours and resulted in a written settlement agreement between Plaintiffs, Villas, and RD that was subject to final approval by RD officials not present during mediation.[23] The agreement was finalized and executed by all parties on August 11, 2025.

## E. Summary Of Claims

### 1. RD's Alleged Constitutional Violations and Violations of the Administrative Procedures Act.

Plaintiffs allege that, before it could accelerate LVDR's Section 515 mortgage, RD was required to ". . . consider the possibility that the borrower is forcing an acceleration to circumvent the prepayment process." (emphasis added).[24] Plaintiffs allege that RD completely failed to make this required threshold determination, in violation of Section 706(1) of the Administrative Procedures Act (APA). Compl. ¶¶ 177-181. Plaintiffs also allege that RD

---

[19] Doc. 45.

[20] Doc. 21.
[21] Doc. 54.
[22] Doc. 81.

[23] *Id.*

[24] 7 C.F.R. § 3560.456(a).

invoked but failed to comply with the prepayment procedures required under ELIHPA in approving the sale of LVDR, something that could have saved their federally subsidized tenancies, in violation of Section 706(2)(A) of the APA. *Id.* at ¶¶ 182-188.

Plaintiffs allege that where an RD decision substantially reduces or terminates assistance under the Section 515 program, aggrieved tenants must be given " . . . written notice of the reasons for denial, reduction or termination and are provided at least an opportunity to appeal an adverse decision . . ." 42 U.S.C. § 1480(g).[25] Plaintiffs allege that RD's decision to accelerate LVDR's loan and approve the sale of LVDR to Villas terminated the Section 521 Rental Assistance on which all Plaintiffs depended to keep their total shelter costs at or below 30% of their incomes.[26] Plaintiffs further allege that despite this reduction in benefits, RD did not give Plaintiffs an opportunity to appeal its decision to accelerate LVDR's loan and approve sale of the property. Compl. ¶¶ 189-192. Plaintiffs allege that these omissions were capricious, arbitrary, and not in accordance with law, in violation of § 706(2)(A) of the APA. *Id.* at ¶ 191. Plaintiffs allege that these omissions also deprived LVDR tenants of their federal housing subsidies without reasonable notice or an opportunity to be heard at a meaningful time or in a meaningful manner, violating Plaintiffs' Fifth Amendment Due Process rights. *Id.* at ¶ 192.

Plaintiffs also allege that RD's administration of its RD Voucher program contradicts LVDR's 2023 Use Restriction, by increasing tenant shelter costs beyond 30% of income and

_____

[25]This includes adverse decisions ". . . with respect to . . . [t]he making or amount of payments or other program benefits to a participant in any program of an agency." 7 C.F.R. § 11.3.

[26] This is the case even where Plaintiffs opted for an RD voucher. Since the subsidy under the voucher is permanently set, tenants must bear the cost of increased rent and utilities, thus pushing their shelter costs beyond the 30% of income limit they enjoyed prior to prepayment.

eroding key tenant protections, and therefore also violates RD regulations that require "[o]wners of prepaid housing properties [to ensure] that the restrictive-use provisions agreed to as a condition of prepayment are observed,"[27] a violation of § 706(2)(A) of the APA. Compl. ¶¶ 193-196. RD denies Plaintiffs' allegations against it.

## 2. Villas' Alleged Violations of the 2023 Use Restrictions and Existing Lease Agreements.

Plaintiffs allege that the uninhabitable conditions RD discovered on September 8, 2022, largely remained after Villas acquired LVDR, a violation of the 2023 Use Restriction which requires compliance with the same RD habitability standards Bosley was subject to. Compl. at ¶¶ 201-202. Plaintiffs allege the 2023 Use Restriction also prohibits Plaintiffs' shelter costs from increasing above restricted levels.[28] Plaintiffs allege that despite this, Villas threatened to raise Plaintiffs' rents above 30% of income in violation of the 2023 Use Restriction. *Id.* at ¶¶ 197-200. Plaintiffs allege the threatened rent hikes also violate terms in Plaintiffs' leases that similarly provide that tenant's rent contribution at the time of prepayment may not be increased by reason of prepayment or other actions caused by the borrower for the term of the lease.[29] *Id.* Plaintiffs allege that Villas' lease violations and its violations of the 2023 Use Restriction also constitute violations of state law prohibiting unfair trade practices, like making false or misleading

---

[27] 7 C.F.R. § 3560.663(b).

[28] The 2023 Use Restriction require compliance with 42 U.S.C. § 1490a(a)(2)(A) and 7 C.F.R. § 3560.256(b), each of which prohibit rent increases beyond 30% of tenant income unless their income exceeds Section 515 program income limitations. Each Plaintiff remains income eligible under Section 515 rules.

[29] *Id.* § 3560.156(c)(3).

statements of fact concerning the price of goods or services, including the amount of rent owed

under a lease. N.M.S.A. 1978, § 57-12-3(D). Villas denies Plaintiffs' allegations against it.

### III.    SUMMARY OF PROPOSED CLASS SETTLEMENT

#### A.  The Settlement Class

The settlement seeks certification of the settlement class defined as:

"all tenants who resided at La Vista Del Rio Apartments in Espanola, NM between March 1, 2023, and October 3, 2023, who met the eligibility requirements under the United States Department of Agriculture-Rural Development's Sections 515 housing."[30]

The timeframe in the class definition covers the period during which the alleged

violations occurred, beginning when RD accelerated the Section 515 loan and ending when

Villas acquired LVDR through what Plaintiffs allege is an illegal prepayment process, which in

turn triggered Villas' obligations under the 2023 Use Restrictions.

#### B.  Relief Provided By The Settlement

Under the Settlement, within 10 days of its execution by all parties, Defendant RD agrees

to reopen its voucher application process[31] to all class members that lived at LVDR on

September 22, 2023.[32] Within one day of final approval of the proposed Settlement, RD will

---

[30] Ex. A § I ¶ 20.

[31] Tenants have only 10 months from the date of prepayment to submit a voucher obligation form, the first step in the voucher application process. See Rural Development Voucher Program Guide (September 2010) at p. 77, available at https://www.rd.usda.gov/media/file/download/mfh-rd-voucher-program-guidebook.pdf. The time for current and former LVDR tenants to apply for a voucher has long since passed.

[32] ¶ 23.

reopen its voucher application process for all remaining class members.[33]  RD will keep the voucher application process open for all class members until 90 days after the Court's final approval of the Settlement.[34] Plaintiffs agree to provide to RD the last known address of each class member to help RD in mailing voucher applications.[35]

Defendant Villas agrees that all class members who resided at LVDR as of September 22, 2023[36] will be entitled to all protections required under the 2023 Use Restriction.[37] Villas further agrees that it will participate in both the RD Voucher program and the Section 8 Housing Choice Voucher program[38] and that it will not deny admission, terminate a tenancy, or otherwise take adverse action against any class member because of their participation in either program.[39] If

---

[33] *Id*.

[34] *Id*.

[35] ¶ 24. RD is not required to mail an application to a class member for whom an address is not provided. *Id*.

[36] This date correlates to the date Villas acquired the property. In their complaint, Plaintiffs allege that Villas acquired LVDR on or about September 25, 2023. Compl.  ¶ 151. During negotiations, the parties settled on September 22 as the acquisition date triggering Villas' obligations under the 2023 Use Restriction.

[37] ¶ 25.

[38] This was included because some class members may opt to apply for a HUD Section 8 Housing Choice Voucher, which also maintains tenant rent at 30% of income and allows for market rent to the owner.

[39] ¶ 27. Villas is also prohibited from retaliating against Class Members for their participation in this litigation including, without limitation, by giving Class Members disparate housing conditions and amenities as compared to other tenants, increasing rent, decreasing services, causing Class Members to move involuntarily, bringing an action to recover possession, or threatening to do any of those acts. *Id*. at ¶ 31.

14

there is a conflict between the 2023 Use Restriction and the subsidy contract under either voucher program, the terms of the 2023 Use Restriction shall control.[40]

Villas also agrees to limit class member rent contributions to 30% of household income, as required under the 2023 Use Restriction and operative class member leases. Incidental to this relief, Villas further agrees to waive any debt owed by class members.[41] Villas must also repair each class member's unit to meet RD Voucher habitability requirements.[42] Defendant RD will confirm compliance with this term by inspecting all units for which an RD Voucher has been issued as required by its Rural Development Voucher Program Guide.[43]

In exchange, Plaintiffs have agreed to release Defendants (and their successors, assigns, and agents) from all claims, both known and unknown, that were raised or could have been raised in the context of this case.[44] RD and Villas similarly release each other from claims that were raised or could have been raised in this litigation, except RD retains the right to enforce federal tax laws and ". . . to pursue any criminal liability, any administrative liability or enforcement right of RD or any other Federal agency, including Defendant RD's right to enforce the [2023 Use Restriction], or any of Defendant Villas' obligations under the Rural Development Housing Voucher Program."[45]

---

[40] ¶ 26.

[41] ¶ ¶ 28 & 29.

[42] ¶ 30.

[43] *Id.*

[44] ¶ 32.

[45] *Id.*

The Settlement contemplates that the Court will retain exclusive and continuing jurisdiction over the case and the parties until it is dismissed.[46] The complaint will be dismissed with prejudice within three business days of the Court's final approval of the proposed settlement and class certification.[47]

### C.  Notice Plan

Within 14 days of the Court's order certifying the proposed class and granting preliminary approval of the Settlement, Plaintiffs will send the Court's approved class notice (Class Notice) to class members via U.S. mail. Class notice will include (1) the Court-ordered date of the hearing where the Court will consider final approval of the settlement; (2) notice that class members have a right to object to the proposed settlement; and (3) instructions to class members on how to object.[48] **The Class Notice is attached hereto as Exhibit B**.

The Settlement provides that class members wishing to object to the Settlement, may do so by attending the final hearing and presenting their objections.[49] Class Members wishing to attend the final approval hearing to present objections must notify class counsel in writing no later than three days prior to the hearing, stating their full name, address, telephone number, intention to appear, and a brief explanation of the basis for the class member's objection.[50]

### IV.   ARGUMENT

---

[46] ¶ 35.

[47] ¶ 36.

[48] ¶ 22.

[49] ¶ 21.

[50] *Id.*

16

**A.  The Court Should Conditionally Certify The Proposed Class For Settlement Purposes**

"The concerns that Rule 23 addresses are present when certifying a case, whether for trial or for settlement." *In re Thornburg Mortg., Inc. Securities Litigation*, 912 F.Supp.2d 1178, 1227 (D.N.M. 2012) (*Thornburg*). Therefore, a class certified for settlement purposes only must nonetheless meet the requirements of Rule 23. *Id.*  However, in certifying a class for settlement purposes, the Court ". . . need not inquire whether the case would, if tried, present intractable management problems, as settlement necessarily means the parties are not proceeding to trial." *Id.*

To gain class certification, the proposed class must meet each element under Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy. *Anderson Living Trust v. WPX Energy Production*, LLC, 306 F.R.D. 312 (D.N.M. 2015) ("*Anderson Living Trust*"). The proposed class action must also match one of three scenarios described in Rule 23(b). Fed. R. Civ. P. 23(b). The settlement here only provides for injunctive relief and thus Plaintiffs seek class certification under Rule 23(b)(2).

"In deciding whether the proposed class meets these requirements, the district court 'must accept the substantive allegations of the complaint as true, though it need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (internal quotation marks omitted). Still, in applying Rule 23, the Court's function is not to conduct an inquiry into the merits of the underlying claims but instead it is only to determine if the requirements of Rule 23 have been met. *Anderson v. City of*

*Albuquerque*, 690 F2. 796, 799 (10th Cir. 1982).

Plaintiffs meet each requirement under Rules 23.

1. **Rule 23(a)**

(a) **Numerosity**

Rule 23(a)(1) requires that the proposed class membership be sufficiently large that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Impractical does not mean impossible and thus impossibility of joinder need not be shown, ". . . only that plaintiff will suffer a strong litigation hardship or inconvenience if joinder is required." *Id.*; *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125-26 (D. Colo. 2016). Further, there is ". . . no set formula to determine if the proposed class is so numerous that it should be so certified." *Rex v. Owens ex. rel. State of Okl.*, 585 F.2d. 432, 436 (10th Cir. 1978). Instead, the determination is made on the specific facts of each case. *Id.* (explaining that "[t]he determination is to be made in the particular circumstances of the case,").

To establish numerosity, the proponent must provide ". . . evidence of established, ascertainable numbers constituting the class . . ." *Rex v. Owens ex. rel. State of Okl.*, 585 F.2d. 432, 436 (10th Cir. 1978). However, "[i]n determining whether a proposed class meets the numerosity requirement, the exact number of potential members need not be shown, and a court may make common sense assumptions to support a finding that joinder would be impracticable." *Anderson Living Trust*, 306 F.R.D. at 380 (internal quotation marks omitted).

The proposed class is defined as "all tenants who resided at La Vista Del Rio Apartments in Espanola, NM between March 1, 2023, and October 3, 2023, who met the eligibility requirements under the United States Department of Agriculture-Rural Development's Section

515 housing" program. As part of the settlement between Plaintiffs and Defendant Bosley, Bosley provided rent rolls for LVDR from September 1, 2022, through September 1, 2023.[51] Relevantly, the rent rolls list the head of household for each occupied unit, the unit size, and they indicate whether a unit was receiving Section 521 Rental Assistance.[52] The rent rolls show that a total of 37 units were occupied at LVDR between March 1, 2023 and October 3, 2023: 12 one-bedroom units, 21 two-bedroom units, and four three-bedroom units.[53] Conservatively assuming that no more than two individuals occupied each unit, Plaintiffs estimate that at least 74 tenants resided at LVDR during the relevant period. Further, each occupied unit was receiving Section 521 Rental Assistance. Since the Section 515 and Section 521 programs work in tandem, tenants certified as eligible to receive 521 Rental Assistance were necessarily eligible for occupancy under the Section 515 program. At bottom, Plaintiffs estimate that at least 74 tenants resided at LVDR during the relevant period who met the eligibility requirements of RD's Section 515 program.

Further, some of these individuals have since moved away. Though not impossible, finding class members that have relocated can be difficult. Ex. D Decl. of Sovereign Hagar ¶ 13. This represents a strong litigation hardship, making joinder impractical, if not impossible, thus supporting a finding of numerosity. See *Colorado Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 358 (D. Colo. 1999) (finding that "[t]he fact that a class is dispersed over several

---

[51] Ex. C, LVDR Rent Rolls.

[52] *Id.*

[53] *Id.* at pp. 7-13.

counties weighs in favor of a finding of numerosity" as does the difficulty in identifying

individual class members). The putative class members are also unlikely to pursue litigation

individually, since they all have limited incomes, and therefore limited access to legal counsel to

pursue litigation,[54] yet another factor in favor of numerosity. *Id.* (listing the ability

of class members to institute individual lawsuits as a relevant factor when assessing numerosity).

**(b) <u>Commonality</u>**

Rule 23(a)(2) requires Plaintiffs to show that there are questions of law or fact common

to the class. Fed. R. Civ. P. 23(a)(2). To meet this requirement, Plaintiffs' individual claims must

depend upon a common contention and "[t]hat common contention . . . must be of such a nature

that it is capable of classwide resolution—which means that determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Each Plaintiff's claims are based on the exact same substantive laws and regulations and

on identical provisions purportedly in their respective lease agreements and the purported 2023

Use Restriction. These claims are also based on the same set of contentions made against each

Defendant: RD's alleged failure to consider whether Bosley's default was intended to skirt

ELIHPA's prepayment requirements; RD's alleged failure to comply with ELIHPA by not

determining the impact on minority housing opportunities prior to loan prepayment; RD's

alleged denial of Plaintiffs' alleged right to notice and appeal of its loan acceleration and

prepayment decisions in violation of Plaintiffs' Fifth Amendment Due Process rights and their

---

[54] Compl. ¶¶ 10-14.

statutory and regulatory right to notice and appeal; RD's administration of its RD Voucher Program in a way that allegedly violates its own 2023 Use Restriction; and Villas' alleged threatened rent increases and alleged continued failure to maintain LVDR in a habitable condition in violation of the 2023 Use Restriction and Plaintiffs' leases.

Plaintiffs also allege the same injury: the loss of tenant protections and deeply subsidized rents that they were entitled to under the Section 515 and Section 521 programs, the 2023 Use Restriction, and their existing lease agreements; abrogation of their federal statutory and due process rights to notice and an opportunity to be heard; and having to endure threatened unlawful rent increases and substandard housing conditions. See Compl. ¶¶ 172-209.

In short, Plaintiffs' contentions involve the same claims, based on the same legal theories, supported by the same operative facts, and they seek redress for the same injuries. Thus, resolution of those contentions will resolve the controversy as to each class member, meaning there is commonality amongst the class.

As to waiver of class member debts, the amounts waived may vary slightly among individuals because different people may owe different amounts. However, the specific waiver amounts are not central to class member claims nor the Settlement itself, since it is a blanket waiver that does not require an individualized calculation of debts owed or other factual determinations. Plus, such factual differences are to be expected in class action litigation and thus they ". . . should not result in a denial of class certification where common questions of law exist." *Anderson Living Trust*, 306 F.R.D. at 380 (internal quotation marks omitted).

**(c)** **Typicality**

Rule 23(a)(3) requires that the claims of the named representative parties be typical of the

claims of the class. Fed. R. Civ. P. 23(a)(3). "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198-99.

The commonality and typicality requirements of Rule 23 tend to merge. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n. 5 (2011). As discussed above with respect to commonality, Plaintiffs' claims are all based on the same legal theories, supported by the same set of operative facts, and they seek redress of the same injuries. Therefore, the claims of the named Plaintiffs are typical of the class as a whole. As to differences in monetary damages, as is the case with commonality, "[i]t is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hospital, Inc*,. 528 F.2d 1181, 1189 (10th Cir. 1975). This includes varying amounts of monetary damages among the putative class members. *Anderson Living Trust*, 306 F.R.D. at 382.

**(d) <u>Adequacy</u>**

Rule 23(a)(4) requires a finding that representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to this inquiry: ". . . (i) whether the named plaintiffs and their counsel have any conflicts with other proposed class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on the class' behalf." *Anderson Living Trust*, 306 F.R.D. at 383.

As to the first question, intra-class conflicts may negate the element of adequacy. *Id.* 383. However, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Id.* at 384 (internal quotation marks omitted). Here, there are no conflicts, big or small, between class members and the named Plaintiffs or their attorneys. Ex. E Decl. of Marcos Segura ¶ 11; Hagar Decl. ¶ 15.

As to the second question, ". . . the experience and competence of the attorney representing the class may inform the court's analysis." *Id.* at 383; *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 653-54 (W.D. Okla. 2012). The National Housing Law Project's (NHLP) mission is to preserve and expand the stock of federally subsidized affordable housing and to protect the rights of tenants of such housing. Accordingly, NHLP's attorneys are experts in the laws and regulations related to federally subsidized housing, including RD Sections 515 and 521 housing, and collectively have decades of experience litigating preservation cases like the one here, including Section 515 prepayment cases.[55] They have also previously litigated cases also involving prepaid Section 515 properties. *See, e.g., Acosta et al. v. Vilsack et al.*, 5:2021cv-04045 (N.D. Iowa October 11, 2021). Further, NHLP attorneys have experience bringing class action cases seeking to protect and redress violations of their federal housing rights, civil rights, and lease claims. Segura Decl.¶¶ 4-6.

The New Mexico Center on Law and Poverty (NMCLP) is a non-profit organization and law firm dedicated to advancing economic and social justice through education, advocacy, and impact litigation. Hagar Decl. ¶¶ 4-7. One of the core goals of NMCLP is advancing protections

---

[55] See NHLP mission statement, available at https://www.nhlp.org/about/mission/.

for renters through legal reform, impact litigation, and preservation of affordable housing. NMCLP has represented multiple classes in litigation in federal court. *Id*. at ¶ 6.

### 2. **Rule 23(b)(2)**

As to declaratory and injunctive relief, Plaintiffs seek certification under rule 23(b)(2). Rule 23(b)(2) permits certification of an injunctive class "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). By its terms, "[r]ule 23(b)(2) 'imposes two independent but related requirements.'" *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) (*Devaughn*) (quoting *Shook v. Board of County Commissioners of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008)) (*Shook*). First, . . . the "defendants' actions or inactions must be based on grounds generally applicable to all class members." *Devaughn,* 594 F.3d. at 1199 (internal quotation marks omitted). Second, plaintiffs must also establish the injunctive relief they have requested is appropriate for the entire class. *Id.*

On the first prong, the conduct at the heart of Plaintiffs' claims indeed involves conduct by RD and Villas generally affecting the entire class. This includes RD's alleged failure to make certain threshold determinations before accelerating the underlying Section 515 mortgage and allegedly approving mortgage prepayment in violation of ELIHPA and Plaintiffs' Due Process, statutory and regulatory right to notice and appeal, robbing *all* Plaintiffs of key procedural protections that could have kept LVDR in the Section 515 program and preserved Plaintiffs' federally-subsidized housing; Villas' alleged threatened rent increases and refusal to maintain LVDR in a habitable condition, both of which Plaintiffs allege violate the 2023 Use Restriction

that protects *all* residents and *each* Plaintiffs' lease; and RD's *program-wide* administration of its

RD Voucher program in a way that Plaintiffs allege violates the 2023 Use Restriction (and

predicate RD regulations), by increasing tenant shelter costs above allowable limits and eroding

key tenant protections.

On the second prong, Plaintiffs allege that RD's actions resulted in LVDR prematurely

exiting the Section 515 program, causing class members to lose their deeply subsidized rents and

the strong tenant protections guaranteed under the program. Plaintiffs further alleged that

although the 2023 Use Restriction requires deeply affordable rent and tenant protections to

remain in place, Villas refused to honor the restrictions and even if it did, it could not afford to

keep rents at deeply affordable levels without Section 521 Rental Assistance, posing a significant

risk to LVDR's long term viability. The injunctive relief proposed by the Settlement effectively

reverses this situation. It requires Villas to honor the 2023 Use Restriction as to each class

member –both those currently living at LVDR and those that choose to reapply for admission –

which limits their shelter costs to 30% of household income and once again extends the slate of

tenant protections class members once enjoyed. To protect LVDR's longer term viability, class

members will be allowed to apply for RD Vouchers that will in turn support deeply affordable

rents, which Villas must accept, subject to its own admissions criteria. And to prevent RD

Voucher requirements from undercutting stronger protections under the 2023 Use Restriction,

the Settlement provides that the restrictions govern in case of any conflict. In short, though it

does not reverse RD's acceleration and what Plaintiffs allege is a prepayment decision, the

injunctive relief in the Settlement still works to remedy the allegedly adverse consequences of

RD's and Villas' alleged wrongful conduct without the need to tailor injunctive relief to each

class member, making injunctive relief appropriate for the entire class.

### 3. Incidental Waiver of Debts

Monetary relief may be obtained in a Rule 23(b)(2) class if it is incidental to the requested injunctive or declaratory relief. *Murry v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *Maher v. Solomon*, Civ. No. 06-714 JAP/LFG, 2008 WL 11413512 *5 (D.N.M. Feb. 1, 2008) (relying on *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)). "Incidental damages are those that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive relief." *Maher v. Solomon*, *supra*, at *5 (internal quotation marks omitted). "Such damages will typically be concomitant with . . . class-wide injunctive or declaratory relief and should be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Id.* (internal quotation marks omitted); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (adding that incidental monetary relief ". . . should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations").

Plaintiffs allege that Villas demanded more rent than allowed under both the 2023 Use Restriction and their respective leases. Plaintiffs also allege that as a direct consequence, some class members accumulated debt to Villas, primarily in the form of rent arrears. Villas has agreed to comply with the rent limits in the use restrictions and leases, and as a logical extension of that equitable relief, Villas has also agreed to waive any debts allegedly owed by class members. Because this is a blanket waiver, this relief does not require individualized determinations, nor does it introduce substantial legal or factual issues. Thus, Villas' waiver of class members' debt

26

is the quintessential monetary relief that is appropriate for certification under Rule 23(b)(2).

**B.  The Proposed Class Action Settlement Is Fair, Reasonable And Adequate**

In considering preliminary approval of a class action settlement, the Court must also determine whether the proposed settlement is fair, reasonable and adequate. *Thornburg*, *supra*, 912 F.Supp.2d at 1241 (D.N.M. 2012). In making this determination, courts apply a four-factor test that includes (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties' judgment that the settlement is fair and reasonable. *Id.*  "Although the Court will consider these factors in depth at the final approval hearing, they also provide a useful guide at the preliminary approval stage."  *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016) (*Pliego*). At bottom, "[i]f the settlement reflects a reasonable compromise of issues in dispute, the court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id.*

Additionally, "[t]he object of preliminary approval is for the Court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness."  *Pliego*, *supra*, at 128. "Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." *Id.* Therefore, courts ". . . will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re*

*Motor Fuel Temperature Sales Practices Litigation*, 258 F.R.D. 671, 675 (D. Kan. 2009).

1.  **The Proposed Settlement Was Fairly And Honestly Negotiated**

In determining whether a settlement is the result of fair and honest negotiations, courts examine "whether the parties have vigorously advocated their respective positions throughout the pendency of the case." *Thornburg*, *supra*, 912 F.Supp.2d at 1241.

Before filing the complaint, Plaintiffs' counsel conducted a thorough investigation of their claims which included preparing two FOIA requests to RD; review of the dozens of documents RD submitted in response dealing RD inspection at LVDR, RD assessments, and the LVDR loan acceleration process; and several interviews with LVDR residents.[56] The documents reviewed presumably form a significant part of the administrative record to which review of Plaintiffs' APA claims would be limited, meaning that a significant amount of the work for trial had been done prior to filing.[57] And because ownership of LVDR was transferred to three different limited liability companies prior to this suit,[58] Plaintiffs also had to conduct a time consuming investigation to determine all necessary private defendants. The complaint was followed by extensive motions seeking preliminary injunctive relief and class certification.[59] The

---

[56] Segura Decl. ¶ 7.

[57] Generally, a court's review of an APA claim is limited to the administrative record, i.e., the evidence and other parts of the proceedings before the agency, and can only be supplemented in very limited circumstances, for example, through limited court-mandated discovery. *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*, 58 F.Supp.3d 1191, 1239-40 (D.N.M. 2014).

[58] Compl. ¶¶ 133-151. LVDR was originally purchased by La Vista Del Rio 1 LLC and eventually transferred to Villas.

[59] Doc. 21 (Motion for Preliminary Injunctive Relief) & Doc. 24 (Motion for Class Certification).

parties then engaged in negotiations off and on from October 2024 to March 2025,[60] including

nine hours of mediation during which the parties vigorously argued their positions before

Magistrate Judge Khalsa.

Plaintiffs' careful pre-filing investigation, subsequent motions work, and monthslong

negotiations, the final stages of which were conducted under the auspices of the Court, all show

that the parties' proposed settlement is the result of transparent, fair and honest negotiations

conducted at arm's length.

**2.**  **Serious Questions Of Law And Fact Exist Placing The Ultimate Outcome Of The Litigation In Doubt**

To establish its claim that RD violated ELIHPA by allowing Bosley to prepay its Section

515 loan without following ELIHPA's requirements, Plaintiffs needed to establish that ELIHPA

applies to prepayments effected in response to a loan acceleration. The question then becomes

whether RD's definition of a prepayment[61] governs or whether there is something different about

a prepayment in the loan acceleration context that exempts it from ELIHPA's mandates. This

would have been a novel question of first impression in this jurisdiction, making its ultimate

resolution uncertain.

Further, even if the Court ultimately found in favor of Plaintiffs on their APA claims, the

remedy was uncertain. Courts have the power to set aside an agency action that is unlawful under

the APA. 5 U.S.C. § 706(2). Ostensibly, vacatur here would set aside RD's decision to accelerate

---

[60] Segura Decl. ¶ 8.

[61] RD defines a prepayment simply as "[p]ayment in full of the outstanding balance on an Agency loan prior to the note's originally scheduled maturity date." 7 C.F.R. § 3560.11 (Definition of Prepayment).

LVDR Section 515 loan and prepayment approval, effectively putting LVDR back into the

Section 515 program with Villas as the new owner.[62] This would have made LVDR eligible to

once again receive much needed Section 521 Rental Assistance. This would have been Plaintiffs'

preferred resolution of this case. RD alleges that there are questions about whether the Court

could fashion such a remedy because it would have purportedly required RD to expend funds

that may have not been appropriated to it by Congress.

      However, vacatur is not the only possible remedy, since courts have discretion to fashion

a remedy other than vacatur based on equitable principles. *American Wild Horse Campaign v.*

*Burgum*, 768 F.Supp.3d 1291, 1323 (D. Col. 2025). This includes simply remanding the matter

back to RD for further proceedings,[63] which could in turn still leave class members without

subsidized rents or tenant protections but in a much worse position to challenge the outcome.

This is just one example of a possible alternative outcome to Plaintiffs' preferred result. The

salient point is that the ultimate resolution of the case was far from certain, even if Plaintiffs had

prevailed.

    **3.**  **Value Of an Immediate Recovery Outweighs The Mere Possibility Of Future Relief**

      The value of the immediate recovery simply means the monetary worth of the settlement.

*Gottleib v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993) (abrogated on other grounds by *Devlin v.*

*Scardellitti*, 536 U.S. 1 (2002). "That value is to be weighed . . . against the possibility of some

---

[62] This would have been the least disruptive approach since under the 2023 Use Restriction
Villas is already required to operate LVDR as if it is still in the Section 515 program.

[63] *Northern New Mexico Stockmans' Ass'n v. U.S. Fish and Wild Life Service*, 494 F.Supp.3d
850, 1031-32 (D.N.M. 2020).

greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.*

As mentioned immediately above, the primary goal of this litigation for Plaintiffs was to keep their rents at 30% of income or less, reinstate Section 515 tenant protections, and protect LVDR's long term viability by bringing LVDR back into the Section 515 program and reinstating Section 521 Rental Assistance. Though the means are different, the ends are largely accomplished through the Settlement: the proposed Settlement requires Villas to honor the 2023 Use Restriction as to all class members, which limits their shelter costs to 30% of household income and once again extends the slate of tenant protections class members once enjoyed. To protect LVDR's long term viability, class members will be allowed to apply for RD Vouchers that, if issued, will in turn support deeply affordable rents, which Villas must accept, subject to its own admissions criteria. In addition, the 2023 Use Restriction will control in case of a conflict with RD Voucher requirements to ensure that the strongest rent restrictions and tenant protections are applied.[64]

It is uncertain that a better result would have been attained had litigation continued. But even if a better result could have been achieved, it would have come at the end of protracted and expensive litigation with no guarantee that Plaintiffs would have been able to maintain their housing and avoid homelessness during the litigation.

4. **Parties' Believe The Settlement Is Fair And Reasonable**

"When a settlement is reached by experienced counsel after negotiations in an adversarial

---

[64] Segura Decl. ¶ 9.

setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. State of Kansas, Dept. of Revenue*, 209 F.Supp.2d 1179, 1182 (D. Kan. 2002). Therefore, "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Id.*

Counsel for the class has significant experience litigating class action lawsuits and housing cases. Based on their experience with similar cases, the strength of Plaintiffs' claims and considering the risks of litigation and the likely lengthy fight ahead, Counsel believe that the settlement represents an excellent result for the class.[65]

### C.  Class Notice Is Adequate

In approving class notice to class members, "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This requires that the notice ". . . clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (v) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Class counsel will administer the Settlement.[66] Pursuant to Plaintiffs' settlement agreement with Defendant Bosley, American Legal Claims Services LLC, the third-party class

---

[65] Segura Decl. ¶¶ 9-10; Hagar Decl. ¶ 16.

[66] Ex. A § I ¶ 22.

administer was able to obtain forwarding addresses for most class members who no longer live at the complex. Because this includes members of the putative class proposed here, Plaintiffs already have the addresses of almost all former and current LVDR residents in the proposed class, which ensures that they will receive class notice. Efforts continue to locate the small number of remaining class members.

And the notice itself, attached hereto as Exhibit B, generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard, thus meeting the requirements of Rule 23. *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1352, 1388 (9th Cir. 1980).

## V.    <u>CONCLUSION</u>

For the forgoing reasons, Plaintiffs respectfully request that the Court grant this motion for certification of the proposed class for settlement purposes and preliminary approval of the Settlement, including class notice, and enter the proposed order concurrently submitted herewith. While RD does not agree with Plaintiffs' assertions about its actions or the operation of the Section 515 and 521 programs, RD agrees that the Court should grant this motion.  Similarly, while Villas does not agree with Plaintiffs' contentions about LVDR or applicable restrictions, it concurs that this motion should be granted. Defendant Bosley Management Inc. also does not oppose the relief sought in this motion.

Dated: September 19, 2025

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Marcos Segura
NATIONAL HOUSING LAW PROJECT
Natalie N. Maxwell

</div>

Marcos Segura
90 New Montgomery St,, Suite 1015
San Francisco, CA 94105
TEL: (415) 546-7000
nmaxwell@nhlp.org
msegura@nhlp.org

NEW MEXICO CENTER ON LAW AND
POVERTY
Sovereign Hager
Maria Griego
301 Edith Blvd., NE
Albuquerque, NM 87102
(505) 255-2840
sovereign@nmpoverylaw.org
maria@nmpovertylaw.org


*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I certify that on September 19, 2025, the foregoing was served on all counsel of record via filing with the court's CM/ECF system.

/s/ *Marcos Segura*
Marcos Segura

34